UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER LYOYA as the
Personal Representative for
THE ESTATE OF PATRICK LYOYA
(Deceased),

     Plaintiff,

v.

CHRISTOPHER SCHURR and
THE CITY OF GRAND RAPIDS,

     Defendants.

Case No. 1:22-cv-1160
Judge Paul L. Maloney
Mag. Sally J. Berens

**ORAL ARGUMENT
REQUESTED**

| | |
|---|---|
| AYANNA D. HATCHETT (P70055)<br>VEN R. JOHNSON (P39219)<br>Attorneys for Plaintiff<br>The Buhl Building<br>535 Griswold, Suite 2600<br>Detroit, MI 48226<br>(313) 324-8300<br>vjohnson@venjohnsonlaw.com<br>ahatchett@venjohnsonlaw.com | TIMOTHY S. FERRAND (P39583)<br>Cummings, McClorey, Davis & Acho, PLC<br>Attorney for City of Grand Rapids<br>19176 Hall Road, Suite 220<br>Clinton Township, MI 48038<br>(586) 228-5600<br>tferrand@cmda-law.com<br><br>T. JOSEPH SEWARD (P35095)<br>KALI M. L. HENDERSON (P76479)<br>Seward Henderson PLLC<br>Attorneys for Christopher Schurr<br>210 E. 3rd St., Suite 212<br>Royal Oak, MI 48067<br>(248) 733-3580<br>jseward@sewardhenderson.com |

### DEFENDANT CITY OF GRAND RAPIDS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

### ***ORAL ARGUMENT REQUESTED***

{01737382-1 }

Defendant CITY OF GRAND RAPIDS, by and through its attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, PLC, states as follows for its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6):

Defendant relies on the law and argument in the attached brief in support of its motion.

Defendant requested concurrence in the relief requested in this motion from Plaintiff.  Concurrence was denied.

WHEREFORE, for all these reasons and for those in the attached brief, Defendant CITY OF GRAND RAPIDS respectfully requests this Honorable Court enter an Order dismissing Plaintiff's Complaint against it with prejudice.

Respectfully submitted,

**_Cummings, McClorey, Davis & Acho, P.L.C._**

By:   _/s/ Timothy S. Ferrand_
      TIMOTHY S. FERRAND (P39583)
      Attorney for City of Grand Rapids
      19176 Hall Road, Suite 220
      Clinton Township, MI 48038
Dated: February 6, 2023       (586) 228-5600

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER LYOYA as the
Personal Representative for
THE ESTATE OF PATRICK LYOYA
(Deceased),

     Plaintiff,

v.

CHRISTOPHER SCHURR and
THE CITY OF GRAND RAPIDS,

     Defendants.

Case No. 1:22-cv-1160
Judge Paul L. Maloney
Mag. Sally J. Berens

**ORAL ARGUMENT
REQUESTED**

| AYANNA D. HATCHETT (P70055) | TIMOTHY S. FERRAND (P39583) |
|---|---|
| VEN R. JOHNSON (P39219) | Cummings, McClorey, Davis & Acho, PLC |
| Attorneys for Plaintiff | Attorney for City of Grand Rapids |
| The Buhl Building | 19176 Hall Road, Suite 220 |
| 535 Griswold, Suite 2600 | Clinton Township, MI  48038 |
| Detroit, MI 48226 | (586) 228-5600 |
| (313) 324-8300 | tferrand@cmda-law.com |
| vjohnson@venjohnsonlaw.com | |
| ahatchett@venjohnsonlaw.com | T. JOSEPH SEWARD (P35095) |
| | KALI M. L. HENDERSON (P76479) |
| | Seward Henderson PLLC |
| | Attorneys for Christopher Schurr |
| | 210 E. 3rd St., Suite 212 |
| | Royal Oak, MI 48067 |
| | (248) 733-3580 |
| | jseward@sewardhenderson.com |

## BRIEF REGARDING DEFENDANT CITY OF GRAND RAPIDS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## ***ORAL ARGUMENT REQUESTED***

{01737382-1 }

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF FACTS ........................................................................1

I.      Parties and Claims .........................................................................1

II.     The Events of April 4, 2022 ..........................................................1

LAW AND ARGUMENT .........................................................................5

I.      Legal Argument ..............................................................................5

II.     Plaintiff Has Failed to Plead a Plausible Claim of Any Constitutional
        Violation ........................................................................................8

III.    Plaintiff Has Failed to Plead a Valid Municipal Liability Claim Against
        Defendant City..............................................................................13

RELIEF REQUESTED.............................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................................................................................................................6

*Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) ...........................7

*Bailey*, 860 F.3d at 386 .........................................................................................7

*Baker v. McCollan*, 443 U.S. 137, 140 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) 8

*Bd. Of Cty. Comm'r's of Bryan Co. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)....................................................................................16

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)........................................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...............................................................................................................6

*Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007).....................................10

*Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000)..............................................10

*Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)...............................................9

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ...........................................22

*Burkey v. Hunter*, 790 Fed. Appx. 40, 41 (6th Cir. 2020) ........................................8

*Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012)......................16

*Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ....16

*Canton*, 489 U.S. at 395 ........................................................................................24

*Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)......................................17

*City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 615, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015)..........................................................................................10

*City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)..............................................................................................................20

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)...........................................................................................................8

*Claiborne Co., Tenn.,* 103 F.3d at 508 .................................................................20

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) .................................................................................................................7

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011).15

*Connick*, 563 U.S. at 63 n.7 ..................................................................................24

*Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir.1996).................................15

*Gambrel v. Knox Cty., Ky.*, 25 F.4th 391, 401 (6th Cir. 2022)................................13

*Gamino-Ramirez v. Hoornstra*, No. 1:16-CV-1141, 2018 WL 10394898, at *2 (W.D. Mich. Feb. 22, 2018).................................................................7

Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1994) ........................14

*Garner*, 471 U.S. at 8–9, 105 S.Ct. 1694.................................................................9

*Gordon v. Bierenga*, No. 18-cv-13834, 2019 WL 2205853, at *3 (E.D. Mich. May 22, 2019) ...........................................................................................................22

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)...9

*Graham*, 490 U.S. at 396 ........................................................................................9

*Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865 ........................................................9

*Graham*, 490 U.S.] at 396, 109 S.Ct. 1865............................................................9

*Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ........................16

*Hagans v Franklin County Sherif's Office*, 695 F.3d 505, 510 (6th Cir. 2012) .......13

*Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989) ......................................6

*Hayes v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1983).......................16

*Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020) ................................................10

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equipment*, 48 F.4th 656, 663 (6th Cir. 2022)......................................................5

*Iqbal*, 556 U.S. at 678 ......................................................................................6, 23

*Jackson v City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) ...........................17

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)........................................................................................................14

Knott v. Sullivan, 418 F.3d 561, 575 (6th Cir.2005)..............................................14

*Kostrzewski v. City of Wyoming*, No. 1:20-cv-682, 2021 WL 5310894, at *7 (W.D. Mich. May 6, 2021) .........................................................................................22

*Landis v. Baker*, 297 Fed. Appx. 453, 464 (6th Cir. 2008) ...................................13

*M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021) ...........................................................................................................8

*M.J.*, 1 F.4th at 452 ...............................................................................................8

*Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) ..........................8

McMillian v. Monroe County, 520 U.S. 781, 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)...............................................................................................................14

Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)...........................................................................14

*Monell*, 436 U.S. at 691 ........................................................................................15

*Monell*, 436 U.S. at 694 ........................................................................................15

*Mullins v. Cyranek*, 805 F.3d 760, 769 (6th Cir. 2015).........................................9

*Mullins*, 805 F.3d at 768 ......................................................................................10

*Murray-Ruhl v. Passinault*, 246 Fed. Appx. 338, 350 (6th Cir. 2007)....................13

*New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).........................................................................................................7

*Nouri v. Cty. of Oakland*, 615 Fed. Appx. 291, 296 (6th Cir. 2015).......................24

*Nouri*, 615 Fed. Appx. at 296 ....................................................................................24

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)..........................................................................................................................15

*Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 978 (6th Cir. 2019) ..................8

*Reich*, 945 F.3d at 978 ..................................................................................................9

*Rogan v. Tomlinson*, No. 4:19-cv-12975, 2020 WL 8968133, at *10-11 (E.D. Mich. Dec. 18, 2020) ...............................................................................................22

*Scott v. Harris*, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).....7

*Shorts v. Bartholomew*, 255 F. App'x 46, 56–57 (6th Cir. 2007) ...........................14

*Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir.1997) ...............................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)................................................................................................7

*Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ...........9

*Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)...................................15

*Thomas v. Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005)...................................21

*Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 366 (6th Cir. 2017).................12

*Thomas*, 398 F.3d at 429.............................................................................................15

*Thomas*, 398 F.3d at 434.............................................................................................23

Thompson v. Ashe, 250 F.3d 399, 409 (6th Cir.2001) .............................................14

*Thornton v. City of Columbus*, 727 Fed. Appx. 829, 837 (6th Cir. 2018)..............12

*Tietz v. Corizon Health, Inc.*, No. 20-10814, 2021 WL 253885, at *8 (E.D. Mich. Jan. 26, 2021)............................................................................................................24

*Twombly*, 550 U.S. at 545 ......................................................................................6, 20

*Twombly*, 550 U.S. at 556-57, 570..............................................................................6

*Verble v. Morgan Stanley*, 676 Fed. Appx. 421, 424 (6th Cir. 2017) ....................18

*Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ..............................................8

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................5

Federal Rule of Civil Procedure 8(a)(2) .....................................................................5

## STATEMENT OF FACTS

### I.      Parties and Claims

This lawsuit arises out of the fatal shooting of Patrick Lyoya by Grand Rapids Police Officer Christopher Schurr on April 4, 2022. Plaintiff Peter Lyoya is the Personal Representative of the Estate of Patrick Lyoya (**ECF No. 2**, PageID.16) He filed this three-count Complaint against Officer Schurr and the City of Grand Rapids asserting Excessive Force against Defendant Schurr (Count I), Municipal Liability against Defendant City (Count II), and a pendant state law claim for Gross Negligence and Willful and Wanton Misconduct against Defendant Schurr (Count III).  (**Id.**, PageID.21-25)

### II.     The Events of April 4, 2022

On April 4, 2022, Officer Schurr was on duty patrolling alone in a fully marked police vehicle.  (**Exs. A-E**, Videos of Incident)[1]  He stopped a tan Nissan Altima for bearing a license plate that was not registered to it.[2]  (**Ex. B** at 1:05-1:25)

---

[1] The event at issue in this case was captured by four separate videos: Officer Schurr's in-car dash camera (**Ex. A**), Officer Schurr's body camera (**Ex. B**), a cell phone video from Mr. Lyoya's passenger (**Ex. C**), and a Ring™ camera at a neighboring property (**Exs. D and E**).  These videos are referred to in the Complaint and are integral to the claims.  As such, they may be considered without converting this motion to dismiss into one for summary judgment.  See Law and Argument Section I, *infra.*

[2] It is a crime in Michigan to "carry or display upon a vehicle any…registration plate not issued for the vehicle or not otherwise lawfully used under this act."  MCL 257.256.  Officer Schurr explained to Mr. Lyoya multiple times that he had stopped him because "the plate does not belong on this car." (**Ex. B** at 1:05-1:25)

The driver of the Nissan, Patrick Lyoya, exited the vehicle (**Ex. A** at 0:35-0:40) ignoring Officer Schurr's multiple directives to "stay in the car" (**Ex. A** at 0:40-0:50; **Ex. B** at 0:40-0:50) and to "get back in the car." (**Ex. B** at 0:45-0:50) Officer Schurr approached and requested Mr. Lyoya's driver's license four separate times. (**Ex. B** at 0:50-1:00) Mr. Lyoya did not respond. (**Id.**) Mr. Lyoya acknowledged that he understood English. (**Id.**) Officer Schurr asked for Mr. Lyoya's driver's license another three times. (**Ex. B** at 1:00-1:15) After the seventh request, Mr. Lyoya advised Officer Schurr that his license was in the car. (**Ex. B** at 1:12-1:20) At the officer's request, Mr. Lyoya opened the driver's side door of the Nissan and asked the passenger to get his license. (**Ex. B** at 1:20-1:40; **Ex. A** at 1:20-1:40)

Mr. Lyoya then closed the car door without obtaining the license and walked toward the front of the Nissan. (**Ex. B** at 1:40-1:45; **Ex. A** at 1:40-1:45; **Ex. D** at 0:45-0:50) Officer Schurr issued verbal commands: "No. No. No. Stop. Stop." (**Ex. B** at 1:45-1:50) Mr. Lyoya did not comply. (**Id.**; **Ex. A** at 1:40-1:57) Officer Schurr attempted to restrain Mr. Lyoya by grabbing the top of his right arm. (**Exs. A and B** at 1:45-1:57) and repeating the verbal command to "Stop" and "Put your hands behind your head." (**Ex. B** at 1:45-1:57) Mr. Lyoya pulled away and pushed Officer Schurr, attempting to break free. (**Exs. A and B** at 1:45-1:57) Officer Schurr struggled to gain control of Mr. Lyoya while Mr. Lyoya fought to break away. (**Exs. A and B** at 1:45-1:57; **Ex. D** at 0:50-1:00) Mr. Lyoya broke Officer Schurr's grasp,

ignored the officer's directives to "stop," and sprinted around the back of the Nissan toward the front lawn of the adjoining property. (**Id.**)

Officer Schurr pursued, yelling at Mr. Lyoya multiple times to stop, while radioing that a suspect was running. (**Id.**) Officer Schurr caught and tackled Mr. Lyoya to the ground and grappled to gain control. (**Exs. A** and **B** at 1:57-3:00; **Ex. C** at 0:00-0:22) Officer Schurr repeated verbal commands to Mr. Lyoya to "stop," "get your hands behind your back," and "stop resisting." (**Ex. B** at 1:57-2:40; **Ex. C** at 0:00-0:22; **Ex. D** at 1:00-1:40) Mr. Lyoya did not comply. (**Id.**) Officer Schurr struggled with Mr. Lyoya who fought to break free for another minute.[3] (**Id.**) During the struggle, Officer Schurr used his body weight and struck Mr. Lyoya with a fist and knee to gain compliance. (**Id.**) None of these methods were effective. (**Id.**) Officer Schurr (out of breath) radioed for backup assistance ("more cars") while attempting to restrain Mr. Lyoya. (**Exs. A** and **B** at 1:57-2:40; **Ex. C** at 0:00-0:22)

Mr. Lyoya fought his way back to his feet and Officer Schurr attempted to pull Mr. Lyoya's hands behind his back. (**Exs. A** and **B** at 2:40-3:05; **Ex. C** at 0:22-0:49; **Ex. E** at 0:00-0:34) Mr. Lyoya resisted, locked his arms, twisted his body, and again broke free from the officer's grasp. (**Ex. B** at 2:40-3:05; **Ex. A** at 2:40-3:00; **Ex. C** at 0:22-0:49; **Ex. E** at 0:00-0:34) Officer Schurr repeated verbal commands

---

[3] Mr. Lyoya can be heard saying "okay" in response to the Officer's commands that he put his hands behind his back. However, the video clearly shows that he continued to physically resist and refused to put his hands behind his back.

to "stop" and "stop resisting," which Mr. Lyoya continued to defy. (**Ex. B** at 2:40-3:05; **Ex. C** at 0:22-0:49; **Ex. E** at 0:00-0:34) Mr. Lyoya shouted at his passenger to "Get the keys!" (**Ex. C** at 0:44-0:49)

Officer Schurr withdrew his TASER and attempted to aim it at Mr. Lyoya. (**Ex. B** at 3:05-3:32; **Ex. C** at 0:45-0:50; **Ex. E** at 0:34-0:40) Mr. Lyoya grabbed the TASER with his left hand and diverted it away from his body. (**Ex. B** at 3:05-3:32) During the struggle, the TASER was deployed, but did not contact Mr. Lyoya. (**Id.**) Office Schurr struggled to maintain possession of the TASER as Mr. Lyoya attempted to wrench it out of his hand. (**Id.**) During the struggle, both men fell to the ground. (**Ex. B** at 3:05-3:32; **Ex. C** at 0:45-1:33; **Ex. E** at 0:34-1:40) Thereafter, Officer Schurr commanded Mr. Lyoya to "let go of the TASER" multiple times. (**Id.**) Mr. Lyoya did not comply. (**Id.**)

On the ground, Mr. Lyoya rolled from his back to his side and then onto his stomach pulling the TASER with him in his right hand. (**Ex. C** at 1:33-1:50) Officer Schurr was positioned on Mr. Lyoya's back. (**Id.**) The Officer used his right hand to force the TASER against the ground. (**Id.**) Mr. Lyoya refused to relinquish the TASER despite the Officer's repeated commands to "let go of the TASER." (**Id.**; **Ex. E** at 0:34-1:40) Mr. Lyoya pushed up from the ground onto his hands and knees, lifting the Officer from the ground, and pulling the TASER out of the officer's grasp. (**Ex. C** at 1:33-1:50) Mr. Lyoya now controlled the TASER in his right hand. (**Id.**)

Officer Schurr repeated commands to "let go of the TASER." (**Id.**; **Ex. E** at 0:34-1:40)

After wrestling with Mr. Lyoya for at least a minute, losing control of the TASER, and verbally directing Mr. Lyoya to "let go of the TASER" no less than five times, Officer Schurr reached back for his service weapon with his right hand (which was previously holding Mr. Lyoa's right hand and the TASER toward the ground). (**Ex. C** at 1:50-1:55) Mr. Lyoya turned further to his right, pushed off the ground with his left hand and moved the TASER toward the center of his body. (**Ex. C** at 1:50-2:00) Officer Schurr aimed his service weapon at Mr. Lyoya, and again commanded him to "drop the TASER." (**Id.**) Mr. Lyoya did not comply. (**Id.**) Officer Schurr fired a single shot from his service weapon, ending the struggle. (**Id.**)

## LAW AND ARGUMENT

### I.  *Legal Standard*

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "Rule 12(b)(6) motions are decided under the *Iqbal-Twombly* standard. In order to survive dismissal, the complaint must meet the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2)." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equipment*, 48 F.4th 656, 663 (6th Cir. 2022).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 677 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556-57, 570) (internal citations omitted).

Generally, matters outside the pleadings are not to be considered by a court in ruling on a Rule 12(b)(6) motion to dismiss. *See Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989). However, certain extrinsic sources, including documents

incorporated into the complaint by reference and matters of which a court may take

judicial notice, may also be considered.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

> "When a document is referred to in the pleadings and is integral to the
> claims, it may be considered without converting a motion to dismiss
> into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill.
> Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).  Also, a court
> ruling on a motion to dismiss "may consider materials in addition to the
> complaint if such materials are public records or are otherwise
> appropriate for the taking of judicial notice." *Bailey*, 860 F.3d at 386
> (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young,
> LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

*Gamino-Ramirez v. Hoornstra*, No. 1:16-CV-1141, 2018 WL 10394898, at *2

(W.D. Mich. Feb. 22, 2018) (**Ex. F**).  If the Plaintiff's Complaint "internally

contradict[s] verifiable facts central to his claims, that makes his allegations

implausible." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).  Where

video evidence covers the incident at issue, it may be used to show a plaintiff's

claims are implausible where the video "utterly discredits" the plaintiff's pleadings.

*Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686

(2007)).

Plaintiff's Complaint incorporates by reference video from Defendant

Schurr's body camera, Mr. Lyoya's passenger's cell phone, and a Ring™ camera.

(**ECF No. 2**, PageID.20) (**Exs. B, C, D**, and **E** hereto) There is also video from the

dash camera in Defendant Schurr's vehicle.  (**Ex. A**) These videos are integral to the

claims and may therefore be considered by the Court in ruling on this motion without converting to a Motion for Summary Judgment under Rule 56.

## II. Plaintiff Has Failed to Plead a Plausible Claim of Any Constitutional Violation

"By its terms… [§1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (citing *Baker v. McCollan*, 443 U.S. 137, 140 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Thus, "[a] municipality 'can only be held liable if there is a showing of an underlying constitutional violation by' its officials." *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021) (quoting *Burkey v. Hunter*, 790 Fed. Appx. 40, 41 (6th Cir. 2020)). "In other words, "[t]here can be no…municipal liability under § 1983 unless there is underlying unconstitutional conduct." *M.J.*, 1 F.4th at 452 (quoting *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007)). *See also Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) ("If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City…cannot be held liable for violating that right any more than the individual defendants can.")

Lethal force may be used "if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 978 (6th Cir. 2019)

(quoting *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

"This is an objective test, to be 'judged from the perspective of a reasonable officer

on the scene, "in light of the facts and circumstances confronting them, without

regard to their underlying intent or motivation." *Reich*, 945 F.3d at 978 (quoting

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

> That means we must give careful attention to the facts and the totality
> of the circumstances of the case, "including [1] the severity of the crime
> at issue, [2] whether the suspect poses an immediate threat to the safety
> of the officers or others, and [3] whether he is actively resisting arrest
> or attempting to evade arrest by flight." [*Graham*, 490 U.S.] at 396, 109
> S.Ct. 1865; *see Garner*, 471 U.S. at 8–9, 105 S.Ct. 1694. Police officers
> routinely face "tense, uncertain, and rapidly evolving" situations that
> force split-second judgments about the degree of force required; our
> calculus must account for that fact. *Graham*, 490 U.S. at 396–97, 109
> S.Ct. 1865. So we evaluate the force used through the eyes of a
> reasonable officer at the scene, not with "the 20/20 vision of hindsight."
> *Id.* at 397, 109 S.Ct. 1865; *see Burchett v. Kiefer*, 310 F.3d 937, 944
> (6th Cir. 2002) ("This standard contains a built-in measure of deference
> to the officer's on-the-spot judgment about the level of force that is
> necessary" in a particular situation.).

*Reich*, 945 F.3d at 978.

While there are three *Graham* factors to be considered, the court's primary

focus is on the second factor - "whether the suspect poses an immediate threat to the

safety of the officer or others." *Graham*, 490 U.S. at 396. The reasonableness of

the officer's use of deadly force must be analyzed based on an "objective assessment

of the danger a suspect pose *at that moment.*" *Mullins v. Cyranek*, 805 F.3d 760,

769 (6th Cir. 2015) (quoting *Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir.

2007)) (emphasis in original).  It does not change the analysis if the officer is later determined to have been mistaken about the amount of force that must be used to subdue the threat.  *Mullins*, 805 F.3d at 768.  Nor does it change the analysis if the officer's bad tactics are later determined to have resulted in a deadly confrontation which could have been avoided. *City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 615, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015)).  Courts "may not substitute [their] own opinion of 'proper police procedure for the instantaneous decision of the officer are the scene.'" *Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020) (quoting *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000)).

The City of Grand Rapids incorporates by reference the Law and Argument set forth in Co-Defendant Schurr's Motion to Dismiss (Part II, pages 23-48). (**ECF No. 17**) The video evidence incorporated into these pleadings demonstrates that a "constitutional deprivation has not occurred," and that the use of lethal force, under the circumstances depicted on videos, does not "violate clearly established law."

The shooting death of Patrick Lyoya, although tragic, was objectively reasonable, and a product of an immediate threat of death or serious physical injury to the officer. The video demonstrates that the officer exhausted each conceivable response to Mr. Lyoya's escalating resistance before deploying lethal force. It also reveals that the officer did not resort to lethal force until confronted with the new, immediate threat created when Mr. Lyoya wrenched the TASER from the officer's

hand and struggled toward a position from which he could use it.

Mr. Lyoya was stopped for a license plate violation (which could indicate the vehicle was stolen). Before the officer could obtain a name, identification, or an explanation, Mr. Lyoya attempted to flee on foot. The crime escalated to Felony Assault, and Resisting and Obstructing a Police Officer. Officer Schurr gave verbal directives, which Lyoya ignored. Officer Schurr attempted physical restraint, and Lyoya broke free. Officer Schurr chased, tackled, and grappled with Lyoya, who resisted, and broke free again. Officer Schurr punched and used knee strikes, which did not thwart Lyoya's resistance. Officer Schurr attempted to deploy his TASER, which Lyoya grabbed and diverted away from his body. There is no dispute that Lyoya "actively resisted arrest," and no dispute that Officer Schurr was not able to physically or verbally control Lyoya despite using every conceivable method available to him. Further, Lyoya's actions demonstrate violence, intent to evade arrest, and defiance of police directives, each increasing the level of threat to the officer's safety.

Regardless, Officer Schurr did not use lethal force until, each of the following had occurred:

1. Schurr and Lyoya fell to the ground wrestling for the TASER.

2. Lyoya pulled the TASER from Schurr's hand.

3. Lyoya rolled onto his right side preventing Schurr from holding the

TASER to the ground (out of harm's way).

4. Lyoya pulled the TASER under his body while pushing up to remove
   Schurr from his back.

At the moment lethal force was deployed, the officer and Lyoya were in direct physical contact. The men had been grappling for minutes and fighting for possession of the TASER. The officer was unable to physically control Lyoya. The officer was out outnumbered, and Lyoya was attempting to involve the passenger of the vehicle. Lyoya had just taken control of the TASER and was moving toward a position where he could deploy it. Officer Schurr's decision to use lethal force was objectively reasonable given the totality of these circumstances.

Where the threat posed by the suspect could have easily and quickly transformed into deadly action in a split-second, the use of deadly force is reasonable. *Thornton v. City of Columbus*, 727 Fed. Appx. 829, 837 (6th Cir. 2018). Officers do not have to wait for the suspect to raise his weapon before employing deadly force. *Id.* at 838 (citing *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 366 (6th Cir. 2017)).  Where the suspect possesses a weapon in a threatening manner in close physical proximity to an officer, it is reasonable for that officer to believe that the suspect poses a serious physical threat requiring a use of deadly force. *Id.* at 837.  The "subjective intent of the victim – unavailable to the officers who must make a split-second judgment – is irrelevant to the question [of] whether his actions

gave rise to a reasonable perception of danger," and therefore has no bearing on the analysis. *Id.* (citing *Murray-Ruhl v. Passinault*, 246 Fed. Appx. 338, 350 (6th Cir. 2007)).

TASERs are weapons meant to cause temporary incapacitation and/or pain. *See Gambrel v. Knox Cty., Ky.*, 25 F.4th 391, 401 (6th Cir. 2022); *Landis v. Baker*, 297 Fed. Appx. 453, 464 (6th Cir. 2008).  However, as pointed out in Officer Schurr's brief, a TASER can also be used to cause death and serious bodily injury. *Hagans v Franklin County Sherif's Office*, 695 F.3d 505, 510 (6th Cir. 2012).  Officer Schurr did not use lethal force until Lyoya controlled the TASER. The Fourth Amendment does not require Officer Schurr to wait until Lyoya used or even aimed the TASER. Once Lyoya was armed with the TASER, Officer Schurr faced an immediate threat of death or great bodily harm. Further, the TASER could also be used incapacitate the Officer, leaving him vulnerable to physical harm and/or death, and providing Lyoya access to the officer's service weapon, creating further risk for the officer and the public.

The allegations in Plaintiff's complaint are discredited by the video evidence and contradicted by existing law.  There has been no Constitutional violation, and therefore Plaintiff has failed to state a claim for municipal liability against Defendant City.

### III.    *Plaintiff Has Failed to Plead a Valid Municipal Liability Claim Against Defendant City*

"A municipality does not exist in an 'individual' capacity, but only in an 'official' capacity, such that '[l]iability under § 1983 attaches only where a policy or custom of the municipality has caused a violation of the plaintiffs' constitutional rights.'" *Shorts v. Bartholomew*, 255 F. App'x 46, 56–57 (6th Cir. 2007) (quoting *Thompson v. Ashe,* 250 F.3d 399, 409 (6th Cir.2001) and *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Specifically, a plaintiff must "identify the policy, connect the policy to the municipality itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1994).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Knott v. Sullivan,* 418 F.3d 561, 575 (6th Cir.2005); *McMillian v. Monroe County,* 520 U.S. 781, 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); and *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)) (internal citations omitted).  "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Thomas v.*

*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell*, 436 U.S. at 694).

Put another way, "a local government cannot be held liable under § 1983 on a

*respondeat superior* theory." *Monell*, 436 U.S. at 691.

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Id.; Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir.1997); *Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir.1996).

*Thomas*, 398 F.3d at 429.

Plaintiff's *Monell* claims are premised on a failure to train and an alleged

custom of tolerance or acquiescence to the excessive use of force. (**ECF. No. 2**,

PageID.22-24) However, Plaintiff has failed to state a claim upon which relief may

be granted under either theory.

First, Municipal liability for failure to train employees arises out of 'deliberate

indifference to the rights of persons with whom the [untrained employees] come into

contact.'" *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417

(2011). A municipality may be held liable only where there is a "complete failure to

train the police force, or training that is so reckless or grossly negligent that future

police misconduct is inevitable, or would be properly characterized as almost

inevitable to result." *Hayes v. Jefferson County, Ky*., 668 F.2d 869, 874 (6th Cir.

1983) (internal citations omitted). The allegations in the complaint must focus on the "adequacy of the training program in relation to the tasks the particular officers must perform." *Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Further, the Plaintiff must plead facts demonstrating that city officials were "deliberately indifferent" to the inadequacy of the training program. Deliberate indifference "imposes a stringent standard of fault requiring proof that a municipal officer disregarded a known or obvious consequence of his actions." *Bd. Of Cty. Comm'r's of Bryan Co. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Therefore, the pleadings must identify a "risk of a constitutional violation arising as a result of the inadequate training that is plainly obvious." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). To make this showing, the plaintiff must allege either "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it," or evidence of "a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012).

Finally, the plaintiff must also allege facts demonstrating causation by showing that the deficiencies in the training program were "closely related to or

actually caused [the plaintiff's] injury." *Jackson v City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)).

This Complaint does not meet any of these pleading requirements. It does not reference any of the police training programs implemented by the City of Grand Rapids. It does not identify how these police training programs are constitutionally inadequate for the tasks the officers are asked to perform. It does not identify any aspects of the training programs related to the use of force, use of a TASER, use of a firearm, or use of lethal force, or indicate how these aspects of the training programs are constitutionally inadequate.

The Complaint does not identify any specific prior incident of excessive force or lethal force. It does not identify any sustained complaints regarding the use of force or lethal force. It does not indicate whether these complaints were investigated and if any were deemed credible. Importantly, the Complaint does not indicate what, if any, action City officials should have taken in response to any or all allegations of excessive force, or how these allegations should have altered or compelled additional or different training. The Complaint does not contain any fact pattern from which the Court could conclude that City officials were "grossly negligent" in the handling of these complaints and/or in the implementation of the training which followed.

The Complaint does not identify any recurring police activities which have

gone untrained, and does not attempt to link any training (which has or has not occurred) to the encounter between Officer Schurr and Mr. Lyoya. It does not identify any type of training that could have prepared Officer Schurr for this event, where Mr. Lyoya fought off the officer's physical attempts to gain control, then wrestled the officer's TASER away. Nor does it indicate how Grand Rapids police officers (or any other department's officers) are trained to respond to a similar fact pattern, or identify what additional or different training was required from a Constitutional perspective. In fact, the Complaint does not identify any connection or relationship between police training, the lack of training, or a deficiency in training and the events which make up this encounter.

Instead, in the Complaint, Plaintiff conclusively states that a "policy, practice, procedure, protocol and/or custom exists that demonstrates deliberate indifference." (**ECF No. 2**, PageID.22-23) These conclusory allegations are insufficient to state a claim for municipal liability arising out of failure to train. *Verble v. Morgan Stanley*, 676 Fed. Appx. 421, 424 (6th Cir. 2017).

Plaintiff also alleges that the City has a policy of "whitewashing excessive force claims and citizen complaints" and failing to adequately re-train. (**ECF No. 2**, PageID.22-23) However, the Complaint does not identify any prior excessive force claim or citizen complaints that was "whitewashed." Nor does it identify the nature of these claims, whether any claim involved the alleged use of lethal force, and

whether the allegations of any claim were valid or supported by fact. The Complaint does not identify the officers involved in these claims, the result of the City's investigation of these claims, and/or the resulting discipline or training emanating from any sustained allegation.

Importantly, the Complaint does not allege that Officer Schurr was involved in any prior complaint involving force or lethal force which was "whitewashed." It does not identify the City officials involved in the alleged "whitewashing." It does not indicate whether the officials were policy makers or connected to training decisions. Nor does it indicate how the whitewashing of these prior allegations altered training in general or the training provided to Officer Schurr regarding the use of lethal force.  Plaintiff has therefore failed to plead facts demonstrating that training or the absence of training caused or altered the outcome of any important occurrence in the present litigation.

Plaintiff has also failed to allege facts which show that Officer Schurr had knowledge of any prior complaint of excessive force which was "whitewashed," or any reason to react differently in his encounter with Lyoya because of that knowledge.  The Complaint contains no allegation of any prior claim involving lethal force resulting from a lack of training. Plaintiff's bald factual assertion of "whitewashing" is insufficient, as a matter of law, to state a claim for municipal liability.

Second, to state a municipal liability claim under a custom of tolerance/acquiescence theory, Plaintiffs must establish: "(1) the existence of a clear and persistent pattern of [the unconstitutional conduct]; (2) notice or constructive notice on the part of [the Defendant]; (3) the [Defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [Defendant]'s custom was the 'moving force' or direct causal link in the constitutional deprivation." *Claiborne Co., Tenn.,* 103 F.3d at 508 (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

In the Complaint, Plaintiff conclusively avers that Defendant City has a policy, practice, procedure, protocol, and/or custom that demonstrates deliberate indifference to Plaintiff's rights and was the cause and moving force behind the violations and harm suffered.  (**ECF No. 2**, PageID.22-23) These allegations are the "labels and conclusions, and a formulaic recitation of a cause of action's elements" that the Supreme Court has expressly held insufficient to satisfy Rule 8.  *Twombly*, 550 U.S. at 545.

Plaintiff also broadly and conclusively alleges that the city has a history of whitewashing excessive force cases and citizen complaints, and routinely fails to adequately discipline the offending officers.  (**Id.**) However, as noted above, the Complaint contains no factual support for this allegation.  (**Id.**) It provides no facts

as to what offenses were allegedly committed, when they were committed, who was involved, how the city allegedly "whitewashed" them, what discipline and/or training was or was not implemented, and how or why it was inadequate or related to events involving Mr. Lyoya (**Id.**)  Plaintiff has made no attempt to provide any concrete facts showing any possibility of a pattern.  *See Thomas v. Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005).

Plaintiff's claim of "an ongoing practice or custom of racial discrimination" is irrelevant to the Constitutional theory which has been plead in this case -- Excessive Force under the Fourth Amendment. (See **ECF No. 2**, PageID.23)[4] Further, this allegation is unsupported by fact.  Plaintiff states that the Michigan Department of Civil Rights is investigating complaints of "racial discrimination" against the Police Department.  (**Id.**, PageID.24) The allegation of an investigation is meaningless. An investigation does not equate to a violation, much less a pattern of abuse. Plaintiff does not allege that investigators have identified a pattern of lethal force regarding minorities. Nor does he allege that investigators have identified a connection between race and the use of force or lethal force. Plaintiff's gratuitous reference to the investigation is not relevant to the claims asserted herein and appears

---

[4] It is not clear how an alleged ongoing practice of racial discrimination is meant to evidence a policy, custom, or practice that was the moving force behind the violation of Plaintiff's right to be free from *excessive force.*  Plaintiff has not pled an Equal Protection Claim in this case, and race does not determine whether force is or is not excessive.

to be added solely for its inflammatory effect.

Allegations such as these are simply not sufficient to state a valid municipal liability claim under any theory:

> The Court cannot identify any properly pleaded facts that, when assumed to be true, would state a *Monell* claim under a failure to train theory, or any other theory. Plaintiff claims that "Defendant [City], through its policies, procedures, regulations, or customs, or lack thereof" violated his rights. [] She then lists thirteen ways in which the City is liable, including "failing to properly train [,] to enact or provide training[,] to adequately monitor[,] to have proper policies[,] to supervise," and, finally, through other "acts and omissions which may be learned through the course of discovery." (*Id.* at 13–14.) But this is a list of bare legal recitals and conclusions. **There are no concrete factual allegations of other instances of excessive, much less lethal force that plead or even support an inference of a pattern of unconstitutional conduct. Neither is there any mention of what, if any, training exists regarding the use of force**.

*Gordon v. Bierenga*, No. 18-cv-13834, 2019 WL 2205853, at *3 (E.D. Mich. May 22, 2019) (emphasis added) (**Ex. G**).  *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (Failure to train claim failed because the plaintiff had not "set forth any *facts* that there were prior instances of similar misconduct so as to show that the [defendant] was on notice that its training and supervision [] was deficient."); *Kostrzewski v. City of Wyoming*, No. 1:20-cv-682, 2021 WL 5310894, at *7 (W.D. Mich. May 6, 2021) ("A broad assertion that an unconstitutional policy exists without specific prior examples, 'is nothing more than a bare recitation of legal standards' and is insufficient to state a claim.") (**Ex. H**); *Rogan v. Tomlinson*, No. 4:19-cv-12975, 2020 WL 8968133, at *10-11 (E.D. Mich. Dec. 18, 2020)

(Speculative assumptions are insufficient to support a municipal liability claim) (**Ex. I**).

The lone statistic Plaintiff cites is contained in the allegation that the City received 79 citizen complaints for excessive force over the five-year period between 2015 and 2020 and exonerated officers in all but 2.5% of them.  (See **ECF No. 2**, PageID.23) Reliance on the mere number of excessive force complaints against a Police Department falls short of proving any pattern of deliberate indifference on the part of the municipality.  *See Thomas*, 398 F.3d at 434.  Accepted as true, officers were *properly* exonerated in all but 2.5% of the 79 complaints.  This means over a five-year period the City of Grand Rapids (the second most populated City in the State of Michigan) had a total of 79 excessive force claims (15 per year on average). 2.5% of those claims (2 total) were valid. On its face, this statistic demonstrates that there is no pattern of excessive force in the City of Grand Rapids Police Department. Without concrete facts showing that the exoneration of these complaints was *improper*, this allegation "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Finally, Plaintiff's claims regarding the City's actions after Officer Schurr's encounter with Mr. Lyoya are irrelevant to any municipal liability claim. "[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to

constitutional dictates.'"  *Connick*, 563 U.S. at 63 n.7 (quoting *Canton*, 489 U.S. at 395).  Indeed, "[i]t is well settled that the Court cannot find 'notice of a pattern of misconduct (or the pattern itself) *solely* from the [alleged] mistreatment *of the plaintiff*." *Tietz v. Corizon Health, Inc.*, No. 20-10814, 2021 WL 253885, at *8 (E.D. Mich. Jan. 26, 2021) (collecting cases) (quoting *Nouri v. Cty. of Oakland*, 615 Fed. Appx. 291, 296 (6th Cir. 2015) (**Ex. J**) (emphasis in original).  "To do so risks 'collapsing…the municipal liability standard into a simple *respondeat superior* standard.'"  *Nouri*, 615 Fed. Appx. at 296.  The City's handling of Officer Schurr *after* this event simply cannot have been the "moving force" *that caused* this event, and cannot establish the requisite pattern of violations necessary to plead and prove municipal liability.

## RELIEF REQUESTED

WHEREFORE, for all these reasons, Defendant CITY OF GRAND RAPIDS respectfully requests this Honorable Court enter an Order dismissing Plaintiff's Complaint against it with prejudice.

Respectfully submitted,

**Cummings, McClorey, Davis & Acho, P.L.C.**

By:   /s/ Timothy S. Ferrand
TIMOTHY S. FERRAND (P39583)
Attorney for City of Grand Rapids
19176 Hall Road, Suite 220
Clinton Township, MI 48038
Dated: February 6, 2023          (586) 228-5600

### ***CERTIFICATE OF SERVICE***

I hereby certify that on February 6, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: [none]

**_Cummings, McClorey, Davis & Acho, PLC_**

By:   /s/ Timothy S. Ferrand

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word limit of LCivR 7.2(b)(i) because, excluding the parts exempted by LCivR 7.2(b)(i), it contains 6,297 words. The word count was generated using Microsoft Word for Microsoft 365 MSO (Version 2205).

Respectfully submitted,

***Cummings, McClorey, Davis & Acho, P.L.C.***

By:   */s/ Timothy S. Ferrand*
       TIMOTHY S. FERRAND (P39583)
       Attorney for Defendant
       19176 Hall Road, Suite 220
       Clinton Township, MI 48038
Dated: February 6, 2023   (586) 228-5600