## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PETER LYOYA as the
Personal Representative for
THE ESTATE OF PATRICK LYOYA
(deceased),

    *Plaintiff*,

v.

CHRISTOPHER SCHURR and
THE CITY OF GRAND RAPIDS,
    *Defendants*.

Case No. 1:22-CV-1160

Hon.  Paul L. Maloney
Mag. Judge Sally J. Berens

---

VEN R. JOHNSON (P39219)
ARISTIDI D. PAPIOANNOU (P81049)
**JOHNSON LAW, PLC.**
Attorneys for Plaintiff
The Buhl Building
535 Griswold, Ste 2600
Detroit, MI  48226
(313) 324.8300
vjohnson@venjohnsonlaw.com
apapaioannou@venjohnsonlaw.com

TIMOTHY S. FERRAND (P39583)
**CUMMINGS, McCLOREY, DAVIS& ACHO,
PLC.**
Attorney for the City of Grand Rapids
19176 Hall Road, Ste 220
Clinton Twp., MI  48038
(586) 228.5600
tferrand@cmda-law.com

T. JOSEPH SEWARD (P35095)
KALI M. L. HENDERSON (P76479)
**SEWARD HENDERSON, PLLC.**
210 East. 3rd Street, Ste 212
Royal Oak, MI  48067
(248) 733.3580
jseward@sewardhenderson.com
khenderson@sewardhenderson.com

---

## PLAINTIFF'S MOTION FOR RELIEF FROM ORDER
## PURSUANT TO FED R. CIV. P. 60(b)

Now comes Plaintiff, Peter Lyoya, as personal representative of the Estate of Patrick Lyoya, deceased, by and through his counsel, Johnson Law, PLC, and in support of his Motion for Relief from Order pursuant to Fed. R. Civ. P. 60(b) states as follows:

1. This case arises out of the excess force/1983 case arises out of the April 4, 2022 shooting death by Defendant Schurr who shot and killed by way of a gunshot wound to the back of Plaintiff decent Patrick Lyoya's head following a traffic stop. Plaintiff, Peter Lyoya, personal representative of the Estate of Patrick Lyoya, filed this case on December 7, 2022 and filed an Amended Complaint later that same day. **Exhibit A, Amended Complaint and Jury Demand.**

2. Plaintiff's complaint alleged use of excessive force and other claims against Schurr as well as a municipal liability claim against Defendant City of Grand Rapids.

3. Within the Complaint, in Count I which pertains to the excessive force allegations against Schurr, in paragraph 47, Plaintiff stated, "As a proximate result of Schurr's illegal and unconstitutional conduct, Patrick Lyoya died and suffered damages as a result."

4. In Count II, the *Monell* allegations against Grand Rapids, Plaintiff stated in paragraph 49, "City has a policy, practice, procedure, protocol and/or custom

that demonstrates deliberate indifference to the rights of the Plaintiff and in paragraph 58 "tragically and predictably, City's unconstitutional policies, procedures, protocols, and customs, are the moving force behind that constitutional violations complained of here and Patrick's death."

5. Hence, a close review of Plaintiffs Complaint, in multiple paragraphs, reveals that Plaintiff clearly put Defendants on notice that GR's conduct in this case was a proximate cause of Patrick's injuries and death and the violations of his constitutional rights.

6. On February 2, 2023, Defendants Schurr and Grand Rapids filed motions to dismiss before this Court. Plaintiff responded to both of those motions on April 7, 2023.

7. Obviously, the Motion to Dismiss was based on legal grounds and alleged failure to adequately plead a cause of action with which Plaintiff strongly disagreed and opposed.

8. On August 28, 2023, without holding oral argument, and of course without any discovery, Your Honor issued his opinion and order regarding defendants' Motions to Dismiss, denying Schurr's motion in full.

9. Nevertheless, within the court's opinion relative to the motion on behalf of Grand Rapids, the court ruled that the Plaintiff properly stated allegations of *Monell* violations where he alleged a failure to train and supervise as well as

a custom or tolerance of federal rights violations.

10. Nevertheless, the court ruled that despite properly plead *Monell* violations, Plaintiff failed to plead sufficient facts that the City's lack of training or on the on the custom or tolerances of federal rights violations were a proximate cause of Patrick's injuries or death.

11. Had this motion been argued in court, Plaintiff would absolutely have directed this courts attention to multiple paragraphs concerning proximate case, and in the alternative would have asked the court for leave to file an amended complaint to address the courts concerns about the proximate case issues.

12. As a result of the above, the court dismissed Grand Rapids from the lawsuit.

13. FRCP 60 (b) provides this court with discretion and authority to provide Plaintiff relief from the above order due to mistake, inadvertence, surprise or excusable negligent and/or any other reason that justifies relief.

14. Furthermore, FRCP 60 (c) provides that this motion must be made within reasonable time and no more than a year after the entry of this order. Herein, Plaintiff files this motion within 30 days of the courts ruling hence this is absolutely a reasonable time.

Pursuant to the above and other reasons explained fully in the attached brief, Plaintiff respectfully requests this court enter an order allowing Plaintiff to plead

proximate cause or in the alternative give Plaintiff 30 days to amend their complaint to address the court's concerns on the issue of proximate relative to Grand Rapids.

Respectfully submitted,

**JOHNSON LAW, PLC**.

By:  */s/ Ven R. Johnson*
VEN R. JOHNSON (P39219)
ARISTIDI D. PAPIOANNOU (P81049)
Counsel for Plaintiff
Johnson Law, PLC
535 Griswold Street, Suite 2600
Detroit, MI 48226
(313) 324.8300
vjohnson@venjohnsonlaw.com

Dated: September 28, 2023

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PETER LYOYA as the
Personal Representative for
THE ESTATE OF PATRICK LYOYA
(deceased),

     *Plaintiff*,

v.

CHRISTOPHER SCHURR and
THE CITY OF GRAND RAPIDS,
     *Defendants*.

Case No. 1:22-CV-1160

Hon.  Paul L. Maloney
Mag. Judge Sally J. Berens

---

VEN R. JOHNSON (P39219)
ARISTIDI D. PAPIOANNOU (P81049)
**JOHNSON LAW, PLC.**
Attorneys for Plaintiff
The Buhl Building
535 Griswold, Ste 2600
Detroit, MI  48226
(313) 324.8300
vjohnson@venjohnsonlaw.com
apapaioannou@venjohnsonlaw.com

TIMOTHY S. FERRAND (P39583)
**CUMMINGS, McCLOREY, DAVIS& ACHO, PLC.**
Attorney for the City of Grand Rapids
19176 Hall Road, Ste 220
Clinton Twp., MI  48038
(586) 228.5600
tferrand@cmda-law.com

T. JOSEPH SEWARD (P35095)
KALI M. L. HENDERSON (P76479)
**SEWARD HENDERSON, PLLC.**
210 East. 3rd Street, Ste 212
Royal Oak, MI  48067
(248) 733.3580
jseward@sewardhenderson.com
khenderson@sewardhenderson.com

---

# PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR RELIEF FROM ORDER PURSUANT TO FED R. CIV. P. 60(b)

# <u>TABLE OF CONTENTS</u>

QUESTIONS PRESENTED.....................................................................................i

INDEX OF AUTHORITIES.................................................................................ii

STATEMENT OF FACTS ...................................................................................1

STANDARD OF REVIEW ..................................................................................4

ARGUMENT ........................................................................................................6

      I.     Plaintiff adequately stated a claim for municipal
             liability against Defendant City of Grand Rapids ..........................6

CONCLUSION ...................................................................................................14

## ISSUE PRESENTED

I.    WHETHER PLAINTIFF ADEQUATELY STATED A CLAIM FOR MUNICIPAL LIABLITY OR SHOULD BE AFFORDED AN OPPORTUNITY TO AMEND HIS COMPLAINT.

# INDEX OF AUTHORITIES

*Adickes v. S. H. Kress & Co.,*
398 U.S. 144 (1970).................................................................................. 6

*Baynes v. Cleland,*
799 F.3d 600 (6th Cir. 2015)............................................................... 9

*Brown v Matauszak,*
415 F App'x 608 (6th Cir., 2011)................................................... 13

*City of Canton v. Harris,*
489 U.S. 378 (1989)............................................................................7-9

*Conley v Gibson,*
355 US 41 (1957)............................................................................... 10

*Ellis v. Cleveland Mun. Sch. Dist.,*
455 F.3d 690 (6th Cir. 2006)........................................................... 9

*Marchese v. Lucas,*
758 F.2d 181 (6th Cir. 1985)........................................................ 10

*Monell v Dep't of Soc. Servs.,*
436 U.S. 658 (1978).................................................................. passim

*Swierkiewicz v Sorema NA,*
534 US 506 (2002)......................................................................... 10

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR RELIEF FROM ORDER PURSUANT TO FED R. CIV. P. 60(b)**

---

## STATEMENT OF FACTS

On April 1, 2022, Plaintiff's Decedent, Patrick Lyoya (Patrick) was shot and killed by a gunshot wound to the back of his head following a traffic stop by Grand Rapids Police Officer, Defendant Christopher Schurr (Schurr). Peter Lyoya, Patrick's father and Personal Representative of Patrick's Estate filed a lawsuit on December 7, 2022, and shortly thereafter filed an Amended Complaint on the same date.  In the Complaint (**Exhibit A**), Plaintiff set forth factual allegations, as well as three counts setting forth theories of recovery: Count I Excessive Force against Schurr; Count II Monell and Municipality against Grand Rapids; and Count III State Law Claims for Gross Negligence against Schurr.

Plaintiff clearly set forth allegations that Patrick was injured and died as a result of his interaction with Schurr. In particular in Count II, (pages 7-9), Plaintiff alleged the following

> **"City has a policy, practice, procedure, protocol, and/or custom that demonstrates deliberate indifference to the rights of the Plaintiff and was the cause and moving force behind the violations and harm suffered."**

1

In the next few following paragraphs, Plaintiff put Grand Rapids on notice that Grand Rapids had a pattern and practice of routinely "white washing excessive force cases" and failing to discipline offending officers even when the City concluded that the Officers violated its own policies and procedures. Moreover, Plaintiff alleged that in the rare instances where the officers were found to utilized excessive force, the City did not adequately discipline those officers. But instead, as seen in paragraph 52, simply gave them a slap on the wrist.

More fully stated in paragraph 52:

"The rare times City finds an officer to have used excessive force, officers are not sufficiently retrained or disciplined in a manner that would discourage future violations of department policies and constitutional rights. Instead, City gives a "slap on the wrist" punishment to officers which only diminishes the importance of their duty to protect the community and <u>encourages the use of excessive force</u>." *Emphasis Added.*

Finally in paragraph 58:

"Tragically and predictably, City's unconstitutional policies, procedures, protocols, and customs, are the moving force behind the constitutional violations complained of here and Patrick's death."

Taken as a whole, Plaintiff's Complaint adequately put Grand Rapids on notice that Plaintiff's alleged Monell theories of municipal liability against Grand Rapids that were "a proximate cause of Patrick's injuries or death."

On February 2, 2023, Defendants' Schurr and Grand Rapids filed their Motions to Dismiss arguing among other things that there was a failure to adequately plead valid cause of actions. On August 28, 2023, without oral argument, this Court

entered its Opinion regarding Defendant's Motion to Dismiss.  This Court denied Schurr's Motion in full. Nevertheless, as part of this Court's opinion regarding Grand Rapids' Motion, the Court specifically held that the plaintiff adequately pled a failure to train or supervise, as well as custom or tolerance of federal rights violations in their Complaint.  Nevertheless, at page 21, relative to the failure to train allegations, the Court ruled:

> "Because Plaintiff has failed to plead sufficient facts supporting the conclusion that the City's lack of training was the cause of the deprivation of Patrick's constitution rights, the Court finds that the Plaintiff's *Monell* claim for failure to train does not survive the City's motion to dismiss."

Furthermore, on Page 22 under the Custom or Tolerance of Federal Rights Violations, the Court similiary ruled that the "this allegation contains no facts regarding causation-which the Court would accept as true-in order to allow this claim to proceed.  Thus, the Court will dismiss the entirety of Count II, Plaintiff's *Monell* claim, alleged against the City."

Had Plaintiff been given the opportunity for oral argument, Plaintiff would have absolutely reviewed with this court the numerous above paragraphs and others alleging proximate cause.  Furthermore, Plaintiff would have requested from this Court the opportunity to Amend the Complaint since justice would so require and because the governing rules and precedent establish that leave is freely granted, particularly where the parties had not even yet commenced discovery.

Unfortunately, as a result of this ruling, the Court has dismissed Grand Rapids in full.

Pursuant to Fed. R. Civ P. 60, Plaintiff request this Court relieve Plaintiff from this Order of Dismissal from Grand Rapids rule that proximate cause was in fact pled sufficient to satisfy notice pleading requirement. Alternatively, Plaintiff requests this Honorable Court allow Plaintiff thirty (30) days to file an Amended Complaint to address the Court's concerns about the issue of proximate cause.

### STANDARD OF REVIEW

Pursuant to Fed. R. Civ P. 60(b),

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Here, Plaintiff contends that he is entitled to relief relative to the grant of dismissal in favor of Defendant City of Grand Rapids, pursuant to Fed. R. Civ. P. 12. A motion to dismiss under Rule 12(b)(6) tests the facial sufficiency of the complaint. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Rule 12(b)(6) provides that the defendant bears the burden of demonstrating that a plaintiff has not stated a claim upon which relief can be granted. Under the pleading requirements of Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

As the Supreme Court provided in *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

5

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## LAW AND ANALYSIS

I. **Plaintiff adequately stated a claim for municipal liability relative to Defendant Grand Rapids.**

In granting Defendant's motion to dismiss, this Court concluded that Plaintiff adequately failed to allege the causation element of his claim of municipal liability. In *Monell v Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court determined that local governments are properly classified as "persons" under 42 U.S.C. 1983 and thus are amenable to suit under that legislation.  In explaining when such suits are proper, the Court stated as follows:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.  [*Monell*, 436 U.S. at 690.691.]

Addressing why a municipality could be held liable for its customs and not just its officially adopted policies, the Court quoted Justice Harlan's words in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168 (1970): "Congress included customs and

6

usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

Eleven years after *Monell* was decided, the Supreme Court had further opportunity to explain the contours of municipal liability. In *City of Canton v. Harris*, 489 U.S. 378, 380 (1989), the Supreme Court described the issue it faced thusly: "In this case, we are asked to determine if a municipality can ever be liable under 42 U. S. C. § 1983 for constitutional violations resulting from its failure to train municipal employees. We hold that, under certain circumstances, such liability is permitted by the statute."

In affirming that the municipal defendant could be held liable for its failure to train in *City of Canton*, the Supreme Court explained several points that are crucial to the present action. First, in recognizing the viability of a "failure to train" theory, the Court stated that "[f]or reasons explained below, we conclude, as have all the Courts of Appeals that have addressed this issue, there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983. Thus, we reject petitioner's [the City of Canton] contention that only unconstitutional policies are actionable under the statute." *Id*. at 387. Consequently, for the purposes of this case, Plaintiff need not show that the City of Grand Rapids

had any policy that was, itself, unconstitutional. To the contrary, Plaintiff only needed to show that a policy or custom was the driving force of the unconstitutional act committed by Schurr.

Next, the Supreme Court explained that where a Plaintiff proceeds on a theory of failure to train, he must demonstrate that the failure to train was motivated by deliberate or conscious indifference of the municipal defendant.  The Court stated that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality -- a 'policy' as defined by our prior cases -- can a city be liable for such a failure under § 1983." *Id*. at 389.

After explaining a municipality can be held liable for its deliberate failure to train employees, the Court turned to the type of causal connection that had to be shown for liability to attach.  The Court noted "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 391.  Thus, "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id*. at 391.

Lest there is any doubt, the Supreme Court also made it clear that the causal determination is generally a question of fact for a jury to decide:

> Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?

8

> Predicting how a hypothetically well-trained officer would have acted under the circumstances may not be an easy task for the factfinder, particularly since matters of judgment may be involved, and since officers who are well trained are not free from error and perhaps might react very much like the untrained officer in similar circumstances. But judge and jury, doing their respective jobs, will be adequate to the task. [*Id.* at 391.]

Taken in combination, *City of Canton* demonstrates that if a jury finds that a municipality's 1.) failure to train is 2.) the product of deliberate indifference and 3.) is closely related to the ultimate injury caused by a constitutional violation, municipal liability under 42 U.S.C. 1983 is appropriate.

*Monell's* progeny in the Sixth Circuit of course confirms all the above principles. The Sixth Circuit has stated that "[t]o show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015). It has further stated that "[t]o succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Finally, A plaintiff may also establish liability under *Monell* by demonstrating that the municipality ratified the unconstitutional conduct at issue. See *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985). In *Marchese*, the Court held that a ratification of an unconstitutional act after that act occurs can form the basis of a municipal liability claim. See *Marchese*, 758 F.2d at 181.

As the Supreme Court has stated, "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v Sorema NA*, 534 US 506, 514; 122 S Ct 992; 152 L Ed 2d 1, 10 (2002). Similarly, the Supreme Court long ago explained that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v Gibson*, 355 US 41, 48; 78 S Ct 99; 2 L Ed 2d 80, 86 (1957).

The City of Grand Rapids is a sophisticated litigant represented by experienced counsel. It was, without question, on notice of Plaintiff's causation theory regarding his municipal liability claim. Without the benefit of any discovery, Plaintiff was able to detail how the City exonerated its officers in 97.5% of excessive force complaints in a five year period between 2015 and 2020. Plaintiff further explained that even when officers are found to have used excessive force, they are not disciplined or punished sufficiently. Plaintiff directly stated in ¶52 of the

Amended Complaint that such conduct by the City "only diminishes the importance of their duty to protect the community and encourages the use of excessive force."

In addition to the allegations relating to use of force in Grand Rapids, Plaintiff's Amended Complaint alleges in ¶¶ 53-54 that Grand Rapids is also liable because it ratified Schurr's unconstitutional conduct by not timely firing him and instead waiting until he was formally charged with 2nd degree murder, despite having access to all the same evidence as the Prosecutor's Office.  Additionally, ¶¶ 55-58 explain that Grand Rapids also has a history of complaints regarding officers unreasonably pulling their firearms when interacting with minorities.  As Plaintiff's Complaint alleges, which again must be accepted as true, the City has an ongoing practice of racial discrimination in which black drivers are twice as likely to be pulled over as white drivers.  The Michigan Department of Civil Rights has received over 60 complaints relating to racial profiling and disparate treatment of minorities by the Grand Rapids Police Department and has announced that it is conducting an investigation into the allegations.  Notably, ¶¶ 13-14 and ¶¶ 18-19 of the Amended Complaint each indicate that Schurr had no permissible basis to pull over Patrick and that he had decided to pull Patrick over at first sight despite the lack of cause.

When taken together, Plaintiff has alleged that Grand Rapids does not enforce its use of force policies and that it has created an environment where officers, including Schurr, know they can use excessive force without consequence.  Plaintiff

has also alleged that Grand Rapids, through the conduct of its officers, disproportionately target Black drivers through traffic stops, while also noting that Schurr, a white officer, pulled over Patrick, a Black driver, with zero evidence of criminal conduct.  Plaintiff also alleged that, consistent with that environment that tolerates and excuses constitutional violations, Grand Rapids ratified Schurr's unconstitutional killing of Patrick.  Again, without the benefit of any discovery, Plaintiff provided statistics and evidence to support those allegations.  Frankly, this Defendant was provided with far more concrete evidence and a far clearer theory of municipal liability than municipal defendants typically receive at the initial pleading stage.

Plaintiff contends that the portions of the complaint cited above leave no doubt as to the theory of causation in this case- by creating an environment that permitted targeting of minorities and that excused uses of excessive force, Grand Rapids set a chain of events into motion through which Schurr felt justified in pulling over a Black man without legal justification and then did not hesitate to use lethal force without justification or warning.  Schurr's confidence in his ability to do those things without consequence was proven correct initially when Grand Rapids ratified his misconduct.

To the extent the Court believes that this sophisticated litigant was unclear on Plaintiff's theory of causation, Plaintiff should be afforded an opportunity to amend

his complaint to address those concerns.  The Sixth Circuit has quoted, with approval, the notion that "generally, '[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Brown v Matauszak*, 415 F App'x 608, 614 (6th Cir., 2011), quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1483 (3d ed. 2010).  *Brown* likewise noted that "at least three circuits have held that if a complaint is vulnerable to a motion to dismiss, a district court must first permit the plaintiff to file a curative amendment, *even if* the plaintiff does *not* seek leave to amend." *Id*. at 615 (emphasis in original).  That opportunity to amend would be proper here where this Complaint identified Defendant's policy failings in detail, identified the underlying constitutional violations in detail and alleged that those violations were the natural result of those policies, patterns, practices or customs, which is precisely what is required under Monell and its progeny.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion for Relief from Judgment relative to the grant of dismissal in favor of Grand Rapids.  Plaintiff adequately placed Defendant on notice of the nature of his claim for municipal liability.  Those pleadings were sufficient on their face and the motion to dismiss should have been denied in all regards.  At a minimum, Plaintiff should be provided an opportunity to amend his Complaint to further detail the manner in which Grand Rapids's numerous institutional failings caused Defendant Schurr to violate Patrick's constitutional rights on the day he murdered him.

Respectfully submitted,

**JOHNSON LAW, PLC**.

By:  */s/ Ven R. Johnson*
VEN R. JOHNSON (P39219)
ARISTIDI D. PAPIOANNOU (P81049)
Counsel for Plaintiff
Johnson Law, PLC
535 Griswold Street, Suite 2600
Detroit, MI 48226
(313) 324.8300
vjohnson@venjohnsonlaw.com

Dated: September 28, 2023

## CERTIFICATE OF COMPLIANCE

I hereby affirm that this brief is in compliance with LCivR7.2(b)(i) and contains 3,291 words in the Times New Roman Font, 14 point, and generated in Microsoft Word processing software, version 2012.

*/s/ Maria A. Reyna*
**MARIA A. REYNA**

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 28, 2023, a copy of the forgoing document was served upon the attorneys of record in the above cause, by efiling it on the Court's ECF system.

*/s/ Maria A. Reyna*
**MARIA A. REYNA**

15