UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PETER LYOYA,** as the
Personal Representative for
the Estate of **PATRICK LYOYA,**

Case No. 22-cv-01160
Hon. Paul L. Maloney
Mag. Judge Sally J. Berens

Plaintiff,

v.

**CHRISTOPHER SCHURR** and
**THE CITY OF GRAND RAPIDS,**

Defendants.

## DEFENDANT SCHURR'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendant, **CHRISTOPHER SCHURR** by and through the undersigned counsel,

submits the following as his Answer to Plaintiff's Amended Complaint:

### JURISDICTION & VENUE

1.    This is a civil rights action in which the Plaintiff seeks relief for the

violation of rights secured by 42 U.S.C. § 1983, the Fourth Amendment to the United

States Constitution, and Michigan state law.

**ANSWER:** In answer to paragraph 1, Defendant Schurr admits only that this is a

civil rights action. Defendant Schurr denies that 42 U.S.C. § 1983 secures or

provides any rights at issue in this case for the reason that it only permits a party to

file suit for violations of other rights. Defendant Schurr denies the allegations that any violations of any rights under the Fourth Amendment or Michigan law occurred for the reason that they are untrue.

2.    Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

**ANSWER:** In answer to paragraph 2, Defendant Schurr admits the allegations contained therein. He does not contest that jurisdiction lies in this Court when the case returns from United States Supreme Court.

3.    The events that give rise to this lawsuit took place in Grand Rapids, Michigan, which is in the Western District of the State of Michigan.

**ANSWER:** In answer to paragraph 3, Defendant Schurr admits the allegations contained therein.

4.    Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because the City of Grand Rapids is in the Western District of Michigan, the individual Defendant is an employee of the Grand Rapids Police Department, and the events that give rise to the lawsuit took place in Grand Rapids, Michigan.

**ANSWER:** In answer to paragraph 4, Defendant Schurr denies that he is currently an employee of the Grand Rapids Police Department for the reason that it is untrue. Defendant Schurr admits the remaining allegations.

**PARTIES**

5.  Each of the above paragraphs are incorporated here.

**ANSWER:** In answer to paragraph 5, Defendant Schurr incorporates his answers to each of the above paragraphs here.

6.    Plaintiff Peter Lyoya is the decedent's--Patrick Lyoya's--father and the personal representative of Patrick's estate.

**ANSWER:** In answer to paragraph 6, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

7.    Plaintiff proceeds here in accordance with Michigan's Wrongful Death Act. MCL 600.2921, et seq.

**ANSWER:** In answer to paragraph 7, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

8.    On April 4, 2022, Defendant Christopher Schurr ("Schurr"), was employed by the Defendant, the City of Grand Rapids ("City"), as a law enforcement officer and was acting under color of state law and within the course and scope of his employment with City.

**ANSWER:** In answer to paragraph 8, Defendant Schurr admits that he was employed by the City of Grand Rapids as a law enforcement officer on April 4, 2022, and that he was acting under color of state law within the course and scope of his employment.

9. City is a political subdivision of the State of Michigan and has a legal duty to enact and enforce policies, procedures, protocols, and customs that conform with the Constitution and laws of the State of Michigan, as well as the United States.

**ANSWER:** In answer to paragraph 9, Defendant Schurr neither admits nor denies this allegation because the City has been dismissed from the case and this allegation is no longer relevant this case.

F<small>ACTUAL</small> A<small>LLEGATIONS</small>

10. Each of the above paragraphs are incorporated here.

**ANSWER:**  In answer to paragraph 10, Defendant Schurr incorporates his answers to each of the above paragraphs here.

11. On April 4, 2022, at approximately 8:11 a.m., Patrick (a 26-year-old Black male) was driving a tan 2003 Nissan Altima, in Grand Rapids, Michigan, through a residential neighborhood, near the area of Nelson Avenue, SE and Griggs Street.

**ANSWER:** In answer to paragraph 11, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

12.    Patrick's friend (also, a Black male) was with him, riding in the front passenger seat.

**ANSWER:** In answer to paragraph 12, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

13.    Schurr initially spotted Patrick and his friend when he was driving in the opposite direction. Just as their cars passed each other, Schurr instantly turned around to follow behind Patrick's car.

**ANSWER:** In answer to paragraph 13, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

14.    Seconds later, without any discernable ground for reasonable suspicion of a motor code violation or criminal activity, Schurr activated his emergency lights to pull Patrick over.

**ANSWER:**  In answer to paragraph 14, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

15.     Patrick complied and pulled his car over to the side of the road.

**ANSWER:**  In answer to paragraph 15, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

16.     His friend stayed in the front passenger seat, while Patrick got out and stood next to his car.

**ANSWER:**  In answer to paragraph 16, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

17.     Before Schurr could get out of his patrol car, he started yelling at Patrick to get back in his car. Then, he walked right up to Patrick where he was standing.

**ANSWER:**  In answer to paragraph 17, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

18.    Patrick asked Schurr what he did wrong. Notably, Patrick never articulated a verbal threat to Schurr or anyone else.

**ANSWER:**  In answer to paragraph 18, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

19.    Though he did not and could not have seen the back of Patrick's car before he whipped his patrol car around, Schurr told Patrick that the license plate on his Nissan did not match the vehicle.

**ANSWER:**  In answer to paragraph 19, Defendant Schurr admits telling Patrick that the license plate on the car did not match, but denies the remaining allegations contained therein for the reason that they are untrue.

20.    Patrick continued to stand next to Schurr, by his driver's door, while also trying to direct his friend to retrieve his license from inside the car.

**ANSWER:**  In answer to paragraph 20, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

21.    Then, Patrick shut the driver's door and began walking toward the front end of his car. As soon as Patrick moved, Schurr grabbed Patrick with both hands from behind and told him to put his hands behind his back.

**ANSWER:**  In answer to paragraph 21, Defendant Schurr admits that he grabbed Patrick and gave commands that were ignored. As to the remaining allegations, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

22.    Patrick turned and began to run away from Schurr toward an adjacent yard. Schurr radioed "got one running" and chased after Patrick on foot.

**ANSWER:**  In answer to paragraph 22, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

23.    Schurr grabbed, kicked, punched, slapped, and kneed Patrick to the ground.

**ANSWER:**  In answer to paragraph 23, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

24. Patrick got back on his feet and passively tried to free himself from Schurr.

**ANSWER:**  In answer to paragraph 24, Defendant Schurr admits that at some point in the struggle, Patrick got back on his feet; as to the remaining allegation that he passively tried to free himself, Defendant Schurr denies the allegations contained therein for the reason that it is untrue.

25. Schurr only grew more combative and physically aggressive toward Patrick.

**ANSWER:**  In answer to paragraph 25, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

26.    Schurr grabbed Patrick's sweater up with his left hand, while he drew and aimed his Taser at him with his right.

**ANSWER:**  In answer to paragraph 26, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

27.    Contrary to his training, Schurr never gave Patrick a verbal warning before he deployed the Taser.

**ANSWER:**  In answer to paragraph 27, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

28.    As the first probe deployed, Patrick reflexively extended his left arm to deflect the Taser's barrel away from him, to protect himself.

**ANSWER:**  In answer to paragraph 28, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

29.    At the same time, the Taser remained firmly within the grip of Schurr's right hand.

**ANSWER:**  In answer to paragraph 29, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

30.    Again, rather than create space, Schurr stayed within Patrick's reach, re-directed the Taser, and deployed the second, and last remaining, probe. Neither probe made contact with Patrick.

**ANSWER:**  In answer to paragraph 30, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

31.    Patrick then lost his balance and fell down to the ground with his left arm still extended away from his body in an attempt to aim the Taser's barrel at the ground, and away from him.

**ANSWER:**  In answer to paragraph 31, Defendant Schurr neither admits nor denies the allegations contained therein for want of sufficient information upon which to form a belief as to the truth of the averments, and therefore leaves the Plaintiff to his proofs.

32.    Schurr knew that after the second deployment his Taser could only be used as a drive-stun. Yet, he pinned Patrick to the ground using his full body weight on Patrick's back.

**ANSWER:**  In answer to paragraph 32, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

33.    Schurr knew Patrick wasn't armed. But that didn't stop him from holding Patrick down, grabbing his gun, pressing it along the base of his skull, and killing him with one shot to the back of the head.

**ANSWER:**  In answer to paragraph 33, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

34.    This fatal traffic stop was recorded in part by Schurr's body camera, Patrick's passenger's cell phone, and a Ring™ video camera.

**ANSWER:**  In answer to paragraph 34, Defendant Schurr admits that portions of the incident were recorded by his body camera and other recording devices which speak for themselves as to the portions recorded.

35.    Throughout the encounter, even as he passively resisted being placed under arrest and absorbed Schurr's repeated physical attacks, Patrick never voiced a threat or returned a physical blow, in any form, to Schurr.

**ANSWER:**  In answer to paragraph 35, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

## COUNT I: 42 U.S.C. § 1983 - VIOLATION OF CIVIL RIGHTS (Fourth Amendment – Excessive Force)

36.    Each of the above paragraphs are incorporated here.

**ANSWER:**  In answer to paragraph 36, Defendant Schurr incorporates his answers to each of the above paragraphs here.

37.    The Fourth Amendment guarantees citizens to be secure in their persons from unreasonable searches and seizures and the use of excessive force.

**ANSWER:**  In answer to paragraph 37, Defendant Schurr admits that the Fourth Amendment provides the rights stated but denies that any violation of those rights occurred in this case.

38.    At all relevant times, Plaintiff had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unreasonable, excessive, and unlawful seizures pursuant to the Fourth Amendment to the United States Constitution.

**ANSWER:**  In answer to paragraph 38, Defendant Schurr admits that the rights generically described are clearly established under the Fourth Amendment but

denies that any such rights were violated. Defendant Schurr further states that for purposes of qualified immunity, this is not a correct statement of 'clearly established' law because it requires specificity.

39.    At all times relevant, as a law enforcement officer acting under color of law, Schurr was required to obey the laws of the United States.

**ANSWER:**  In answer to paragraph 39, Defendant Schurr admits that he was required to obey the laws of the United States but denies any implication that he failed to do so.

40.    Based on the totality of the circumstances, Defendant Schurr's act of shooting Patrick in the back of the head was objectively unreasonable.

**ANSWER:**  In answer to paragraph 40, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

41.    Schurr lacked any lawful basis to shoot and kill Patrick.

**ANSWER:** In answer to paragraph 41, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

42.    Schurr was on top of Patrick and holding Patrick down to the ground at the time Schurr reached for his deadly weapon, placed it to the back of Patrick's head, and pulled the trigger.

**ANSWER:**  In answer to paragraph 42, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

43.     Patrick was not armed and posed no threat to Schurr or any other person's safety.

**ANSWER:**  In answer to paragraph 43, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

44.     When he shot Patrick in the back of the head, Schurr had no information to support a reasonable suspicion that Patrick was dangerous.

**ANSWER:**  In answer to paragraph 44, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

45.     No reasonable officer would have responded to Patrick's getaway from a traffic stop as a reasonable basis to use deadly force.

**ANSWER:**  In answer to paragraph 45, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

46.     Schurr's actions constituted excessive force in violation of the Fourth Amendment.

**ANSWER:**  In answer to paragraph 46, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

47.     As a proximate result of Schurr's illegal and unconstitutional conduct, Patrick Lyoya died and suffered damages as a result.

**ANSWER:**  In answer to paragraph 47, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

## COUNT II: 42 U.S.C. § 1983--VIOLATION OF CIVIL RIGHTS (Municipal Liability)

Count II has been dismissed by the Court. Therefore, Defendant Schurr will not respond to these paragraphs that are no longer a part of this litigation.

## COUNT III: STATE LAW CLAIMS-GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT—SCHURR

59.    Each of the above paragraphs are incorporated here.

**ANSWER:**  In answer to paragraph 59, Defendant Schurr incorporates his answers to each of the above paragraphs here.

60.    Schurr owed Patrick a duty to act legally and reasonably and to avoid the use of unnecessary and/or excessive force.

**ANSWER:**  In answer to paragraph 60, Defendant Schurr admits that he had to act lawfully, and denies any implication that he did not act lawfully for the reason that it is untrue.

61.    Schurr was grossly negligent and breached these duties to Patrick.

**ANSWER:**  In answer to paragraph 61, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

62.    Schurr breached his duties to Patrick in a number of ways including but not limited to the following:

a.  Failure to make a proper and lawful traffic stop;

b. Failure to deescalate;

c. Failure to wait for backup;

d. Failure to create sufficient space before deploying each Taser probe;

e. Failure to warn Patrick of his intent to use force before he deployed his Taser and/or before he fired his gun;

f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing Patrick to flee from an alleged violation of a traffic offense;

g. An inappropriate, excessive, and inexcusable use of force with a Taser;

h. An inappropriate, excessive, and inexcusable use of deadly force with a gun;

i. Any additional acts and/or failures determined through discovery.

**ANSWER:**  In answer to paragraph 62, including subparts (a) through (i), Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

63.    Schurr's actions demonstrated a reckless disregard of his legal duties as well as a substantial lack of concern for whether death or injury would result from his actions.

**ANSWER:**   In answer to paragraph 63, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

64.    Likewise, Schurr's actions were willful and wanton as they demonstrated a malicious risk of harm and an indifference to the consequences of his actions.

**ANSWER:**  In answer to paragraph 64, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

65.    As the direct and proximate result of Schurr's gross negligence and/or willful and wanton misconduct, Patrick was unlawfully and unnecessarily killed.

**ANSWER:**  In answer to paragraph 65, Defendant Schurr denies the allegations contained therein for the reason that they are untrue.

### Relief Requested

Wherefore Defendant respectfully requests that the Court enter an order of no cause of action, denying any entitlement to damages, costs, and attorney fees, and award Defendant his costs in defending this matter.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   February 24, 2025          E: khenderson@sewardhenderson.com

## <u>Reliance on Jury Demand</u>

Defendant Schurr hereby relies on the demand for a jury trial submitted by Plaintiff.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   February 24, 2025    E: khenderson@sewardhenderson.com

# **Affirmative Defenses**

Defendant Schurr raises the following affirmative defenses to the claims as stated in the Amended Complaint:

1.      That some or all of these claims are barred by qualified immunity under both prongs of the analysis.

2.      That Defendant acted in defense of himself and others in response to an immediate and serious threat presented by Patrick Lyoya.

3.      That some or all of these claims are barred by governmental immunity provided by state law.

4.      That some or all of these claims are barred by qualified immunity provided by state law.

5.      That the individuals did not act willfully or maliciously, and acted in good faith.

6.      That Plaintiff's Amended Complaint contains inaccurate statements of the law that are unsupported.

7.      That Plaintiff has failed to state a claim upon which relief can be granted.

8.      That the Plaintiff cannot recover some or all of the claimed damages in the Amended Complaint.

9.     That the actions of Patrick Lyoya contributed to or caused the injuries described in the complaint.

10.     That Patrick Lyoya was intoxicated and his intoxication is more than 50% at fault for the injuries he suffered.

11.     That Patrick Lyoya was intoxicated and his intoxication was a contributory factor that must reduce his damages.

12.     That the Wrongful Death Act and federal limitations on damages for constitutional claims limit what damages are recoverable.

These Defendants reserve the right to list additional Affirmative Defenses as they become known throughout the course of this litigation.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   February 24, 2025          E: khenderson@sewardhenderson.com

## PROOF OF SERVICE

I hereby certify that on Monday, February 24, 2025 m I electronically filed the
foregoing documents (3) with the Clerk of the court using the ECF system, which
will send notification to the following: *All Parties and Attorneys of Record.*

<u>/s/ Kali M. L. Henderson</u>
SEWARD HENDERSON PLLC
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
T: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com