UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **PETER LYOYA,** as the Personal Representative for the Estate of **PATRICK LYOYA,** | Case No. 22-cv-01160 Hon. Paul L. Maloney Mag. Judge Sally J. Berens |

      Plaintiff,

v.

**CHRISTOPHER SCHURR** and
**THE CITY OF GRAND RAPIDS,**

      Defendants.

## EXPEDITED CONSIDERATION REQUESTED

### DEFENDANT SCHURR'S MOTION FOR A GAG ORDER LIMITING EXTRAJUDICIAL STATEMENTS BY THE PARTIES

Defendant **CHRISTOPHER SCHURR** by and through the undersigned counsel, submits the following as his Motion for a Gag Order Limiting Extrajudicial Statements by the Parties.

Defendant Schurr respectfully asks this Court to issue a gag order for the duration of these proceedings which restricts the parties and their counsel from any further communication to the public and the media regarding:

(1) The character, credibility, or expected testimony of any party or witness;

(2) The contents, admissibility, or anticipated impact of any evidence, whether obtained or yet to be discovered;

(3) The merits of the case including any statements that comment on the strength or weakness of the claims, defenses, or anticipated outcomes;

(4) The making of any statements — in any form — that contain or imply legal conclusions about the case, including but not limited to assertions that a party is liable, has committed a wrongful act, or will inevitably prevail at trial, including the use of such inflammatory words to describe the wrongful conduct such as 'murder' and 'execution';

(5) The direct or indirect use of paid public advertising — including but not limited to billboards, print advertisements, television or radio spots, digital or social media campaigns — intended to sway public opinion, taint the jury pool, or place improper pressure on the judicial process; and

(6)  Any other information counsel knows or reasonably should know is likely to interfere with a fair and impartial adjudication of this case.

In support of this request, Defendant relies on the facts and arguments presented in the attached brief.

Pursuant to Local Rule 7.1(d), the undersigned counsel certifies that the grounds for this motion were explained to Plaintiff's counsels via email, when a phone call was unanswered, in an attempt to ascertain whether the motion will be opposed. Plaintiff's counsel declined to concur in the relief.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
Dated:   April 18, 2025          E: khenderson@sewardhenderson.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PETER LYOYA,** as the
Personal Representative for
the Estate of **PATRICK LYOYA,**

Plaintiff,

v.

**CHRISTOPHER SCHURR** and
**THE CITY OF GRAND RAPIDS,**

Defendants.

Case No. 22-cv-01160
Hon. Paul L. Maloney
Mag. Judge Sally J. Berens

## DEFENDANT SCHURR'S BRIEF IN SUPPORT OF HIS MOTION FOR A GAG ORDER LIMITING EXTRAJUDICIAL STATEMENTS BY THE PARTIES

# TABLE OF CONTENTS

Index of Authorities ...................................................................................6

Statement of the Issue .............................................................................8

Introduction ..........................................................................................9

Statement of Facts ...................................................................................10

Law and Argument ...................................................................................12

I......................Gag Orders are Permissible When, Like Here, There is a Showing of a Substantial Likelihood of Material Prejudice .........................................................12

    A.    Law ...........................................................................................12

    B.    Application........................................................................................16

II. Defendant's Requested Gag Order Is Narrowly Tailored to Ensure His Right to a Fair Trial.......................................................................................18

    A.    Law ...........................................................................................18

    B.    Application........................................................................................19

III..Defendant's Requested Gag Order Is The Least Restrictive Means Necessary to Protect His Sixth Amendment Right.......................................................................21

    A.    Law ...........................................................................................21

    B.    Application........................................................................................23

Conclusion ...........................................................................................25

Certificate of Compliance ...........................................................................27

# INDEX OF AUTHORITIES

## Cases

*Aaron v. Durrani*,
  No. 1:13-CV-202, 2013 WL 12121516 (S.D. Ohio Oct. 1, 2013) .......................12

*Affeldt v. Carr*,
  628 F. Supp. 1097 (N.D. Ohio 1985)....................................................................12

*CBS Inc. v. Young*,
  522 F. 2d 234 (6th Cir. 1975) ........................................................................ 12, 13

*Gannett Co. DePasquale*,
  443 U.S. 368 (1979)...............................................................................................13

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991)................................................................................. 13, 14, 22

*Levine v. U.S. Dist. Ct. for Cent. Dist. of California*,
  764 F.2d 590 (9th Cir. 1985) ................................................................................19

*Marceaux v. Lafayette City-Par. Consol. Gov't*,
  731 F.3d 488 (5th Cir. 2013) ................................................................................15

*Procunier v. Martinez*,
  94 S. Ct. 1800 (1974)...................................................................................... 18, 21

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)...............................................................................................9, 13

*Sheppard v. Maxwell*,
  384 U.S. 333 (1966)....................................................................................... 13, 16, 21

*Smith v. Goguen*,
  94 S. Ct. 1242 (1974)............................................................................................19

*United States v. Brown*,
  218 F.3d 415 (5th Cir. 2000) ...................................................................... passim

*United States v. Ford*,
    830 F.2d 596 (6th Cir. 1987) .................................................................13

*United States v. Koubriti*,
    307 F. Supp. 2d 891 (E.D. Mich. 2004) ..............................................14

## STATEMENT OF THE ISSUE

I.  Whether the court should issue a gag order to prevent further extrajudicial statements by Plaintiff and his counsel that pose a substantial risk of prejudicing the jury given the publicity of the case?

Defendant answers, "*Yes.*"

Plaintiff answers, "*No.*"

II.  Whether such an order is justified under *Gentile v State Bar of Nevada*, 501 U.S. 1030 (1991), where Plaintiff has made public statements asserting legal conclusions, disclosing expert opinions, and promoting inflammatory messaging?

Defendant answers, "*Yes.*"

Plaintiff answers, "*No.*"

III. Whether the proposed gag order is narrowly tailored and the least restrictive means available to protect Defendant's right to a fair trial, particularly in light of extensive pretrial publicity and the limitations of alternative safeguards?

Defendant answers, "*Yes.*"

Plaintiff answers, "*No.*"

## INTRODUCTION

Defendants seek the imposition of a Gag Order on Plaintiff on the grounds that Plaintiff and his counsel's repeated widespread dissemination of information to the media is substantially likely to prejudice a potential jury pool. Plaintiff and his counsel have run an extensive media campaign asserting legal conclusions regarding the merits of this case, including press conferences, social media posts, and billboard advertisements demanding "JUSTICEFORPATRICKLYOYA." [Exhibit 9, Billboard] This campaign has been designed to influence public opinion against Schurr on the merits of this case.

This order is necessary to preclude a substantial likelihood of material prejudice to the Defendant's fundamental right to a fair trial by an impartial jury. While the Sixth Amendment expressly applies to criminal proceedings, courts have recognized that similar fair trial protections exist in civil cases through the Due Process Clause of the Fifth and Fourteenth Amendments. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 n.18 (1984) (acknowledging that First Amendment rights may be subordinated to other interests in both civil and criminal trials). Accordingly, Defendant Schurr respectfully requests this Court to issue a gag order for the duration of these proceedings limiting the parties and their counsel from any further communication to the public and the media.

## STATEMENT OF FACTS

Plaintiff Peter Lyoya, as the personal representative for the Estate of Patrick Lyoya, filed a lawsuit against Defendant Christopher Schurr and the City of Grand Rapids on December 7, 2022. [ECF No. 1, PageID.1] This case arose following the death of Patrick Lyoya and has garnered significant public and media attention. Plaintiff and his legal team have since engaged in an extensive media campaign, including press conferences, social media posts, and billboard advertisements.

Following the filing of this complaint, Plaintiff and opposing counsel called for a press conference. [Exhibit 8, Michigan Public Article] There, Plaintiff's counsel went into great detail describing the alleged actions of the Defendant, the evidence, and the issues central to the case. Plaintiff's counsel then openly criticized the Defendant's actions and asserted that the Defendant "grossly deviated" from his training.

Plaintiff's counsel also began to provide extensive media interviews. In an interview with CNN, counsel concluded that "Schurr unnecessarily escalated a situation involving an unarmed Black man" [Exhibit 1, CNN Article] In an article by WoodTV, Plaintiff's counsel provided an interview discussing the plaintiff's actions including the conclusion that the Defendant did not follow proper protocol. [Exhibit 2, WoodTV Article] In that interview, he revealed recently obtained expert opinions which drew legal conclusions, stating:

10

[The experts] have opined in their affidavits that what we saw here was not only gross derivation, not just a complete ignorance and refusal to follow Schurr's own training, but even more importantly for us in terms of what we're talking about, that this deadly force was unnecessary and therefore under the law illegal and excessive.

[Exhibit 2, WoodTV Article]

Plaintiff has also participated in numerous interviews. In an interview with WDIV he stated that, in regard to Lyoya's death, "[t]he proof is out there. You saw how my son was killed. He was murdered." [Exhibit 3, Facebook Post on April 5, 2023] He also speculated about testimony regarding Plaintiff's alleged use of a deadly weapon and confirmed that Schurr would testify to his state of mind. [Exhibit 4, Local 4 Article ("Even if Schurr is right that Patrick had the taser, it was meaningless… It would have done nothing to Schurr.")]

On December 2, 2024, opposing counsel made a public Facebook post stating that "Schurr executed Patrick by shooting him in the back of the head at point-blank range during a traffic stop." [Exhibit 5, Compilation of Facebook Posts by Ven Johnson Law] This is not an isolated social media post. Opposing counsel has made or shared over two dozen posts just on Facebook discussing the case, the parties, and legal assertions. [Exhibit 5, Compilation of Facebook Posts by Ven Johnson Law]

On March 24, 2025, opposing counsel made another public Facebook post where he continued to share updates about the criminal trial." [Exhibit 6, Facebook on March 24, 2025] In this post, opposing counsel provided a detailed update on jury

selection, stating when it would begin and indicating his plans to monitor the trial.

*Id.* He also referenced the upcoming depositions he would be taking. He stated that

he would continue to provide updates throughout these proceedings.

## LAW AND ARGUMENT

The following passage from succinctly states when and why a district court

can issue a gag order:

> Courts have long recognized that 'the trial court may sua sponte issue
> a Gag Order upon the parties to the litigation without an evidentiary
> hearing.' *Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985).

> 'The right to a fair trial, both in civil and criminal cases, is one our most
> cherished values, and [...] a trial judge should have the authority to
> adopt reasonable measures to avoid injury to the parties by reason of
> prejudicial or inflammatory publicity.' *CBS Inc. v. Young*, 522 F. 2d
> 234, 241 (6th Cir. 1975). Gag Orders fall within the Court's prerogative
> to maintain appropriate decorum in the administration of justice and to
> protect the rights of the litigants from prejudice. *Affeldt*, 628 F. Supp.
> at 1101.

*Aaron v. Durrani*, No. 1:13-CV-202, 2013 WL 12121516, at *1 (S.D. Ohio Oct. 1,

2013) [Attached as Exhibit 7, Aaron] Below, Defendant will cover the law governing

gag orders, and demonstrate why one is necessary in this case.

## I.   GAG ORDERS ARE PERMISSIBLE WHEN, LIKE HERE, THERE IS A SHOWING OF A SUBSTANTIAL LIKELIHOOD OF MATERIAL PREJUDICE

### A.   Law

"Although litigants do not 'surrender their First Amendment rights at the

courthouse door, those rights may be subordinated to other interests that arise in the

context of both civil and criminal trials." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 n.18 (emphasis added). Trial courts have "an affirmative constitutional duty to minimize the effects of prejudicial [pretrial] publicity." *Gannett Co. DePasquale*, 443 U.S. 368, 378 (1979). To protect a defendant's right to a fair trial, a trial court may impose reasonable restrictions on the release of information to the media by any lawyer, party, witness, court officials, or governmental employees within its jurisdiction. *Sheppard v. Maxwell*, 384 U.S. 333 (1966). "The courts may take such steps by rule and regulation that will protect their processes from prejudicial outside influence. Neither prosecution, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be free to frustrate its function." *Sheppard*, 384 U.S. at 363.

Gag orders are intended to prevent two principal types of prejudice. First, publicity that is likely to influence the actual outcome of the trial. Second, publicity likely to prejudice the jury. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." 501 U.S. at 1075. The Sixth Circuit has held in *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975) and *United States v. Ford*, 830 F.2d 596 (6th Cir. 1987) that to justify broadly-based restrictions on speech in connection with litigation, the exacting "clear and present danger test" must be

satisfied.

However, both the *CBS* case and the *Ford* case pre-date the Supreme Court's decision in *Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991), in which the Supreme Court expressly held that the "clear and present danger" of "actual prejudice or an imminent threat," standard only applied to broadly-based restrictions directed at the press. The *Gentile* Court determined that speech of those participating in litigation before the courts may be regulated under a far less demanding standard than the standard established for regulation of the press, and expressly upheld as constitutionally permissible restrictions on lawyers' speech when there is a showing of only a "substantial likelihood of material prejudice" to fair trial rights. *United States v. Koubriti*, 307 F. Supp. 2d 891 (E.D. Mich. 2004).

Neither the Supreme Court nor the Sixth Circuit has defined the proper standard for issuing a gag order on trial participants since the Supreme Court's decision in *Gentile*. The Fifth Circuit has created a clear distinction between gag orders on the press and gag orders on trial participants. In *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), the court concludes that a district court may impose an appropriate gag order on parties and/or their lawyers if it determines that extrajudicial commentary by those individuals would present a "substantial likelihood" of prejudicing the court's ability to conduct a fair trial. If the court determines that there is a "substantial likelihood" that extrajudicial commentary by

trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is narrowly tailored and the least restrictive means possible. *Brown*, 218 F.3d at 428.

In *Brown*, the Court applied the substantial likelihood of prejudice test to both attorneys and parties in the context of a gag order applied in a criminal case. In *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488 (5th Cir. 2013), the Court concluded that the standard in *Brown* represents the right balance for civil cases. *Id*. at 494. In *Marceaux*, several officers from the Lafayette Police Department appealed the district court's grant of a protective order requiring that a website operated by the officers be taken down in its entirety. *Id.* at 494-95. The website was used by the plaintiff officers to communicate with the media about their case against the Lafayette PD defendants, who they alleged prevented them from reporting civil rights abuses and corruption within the Lafayette PD. *Id.* at 490-91. The Fifth Circuit concluded that the district court erred in concluding that the entirety of the website was substantially likely to cause prejudice; however, the court also concluded that they do not intend to tie the hands of the district court in addressing some of the content and held that the substantial likelihood of prejudice test for gag orders applies to civil cases.  *Id.* at 494, 496.

Additionally, the enormous scale of publicity curated surrounding the underlying case in *Brown,* further influenced the Court's opinion that the parties'

actions had "created a heightened and somewhat unique danger of tainting" a jury. *Brown*, 218 F.3d. at 429. In *Sheppard*, the media had published a series of articles providing a play-by-play of Sheppard's investigation and judicial proceedings, emphasized evidence that tended to implicate the defendant, drew legal conclusions, and ultimately influenced a significant portion of the public to side against the defendant before his trial even began. *Sheppard v. Maxwell*, 384 U.S. 333, 353-559 (1966)

### B.   Application

Here, it is apparent that the extrajudicial statements made by Plaintiff and his counsel create a substantial likelihood of material prejudice to Defendant Schurr's right to a fair trial. This case has received significant media attention similar to *Sheppard*, where pretrial publicity "emphasized evidence that tended to implicate the defendant, drew legal conclusions, and ultimately influenced a significant portion of the public" against the defendant.

The record shows a pattern of prejudicial public statements by Plaintiff and counsel. First, they have repeatedly drawn legal conclusions about Defendant's liability. Plaintiff's counsel publicly asserted that Defendant "grossly deviated" from his training, that the force used was "unnecessary and therefore under the law illegal and excessive," and even characterized the incident as an "execution" in a Facebook post stating that "Schurr executed Patrick by shooting him in the back of the head at

point-blank range." These statements go far beyond general descriptions of the allegations and directly assert Defendant's culpability.

Second, they have disclosed non-public evidence and expert opinions, revealing "recently obtained expert opinions" in media interviews. Such revelations taint the jury pool by presenting evidence outside the controlled environment of court proceedings where proper evidentiary rules would apply.

Third, Plaintiff and his counsel have engaged in a coordinated publicity campaign including press conferences, social media posts, and billboard advertisements demanding "JUSTICEFORPATRICKLYOYA." [Exhibit 9, Billboard] As in *Brown*, where the Fifth Circuit noted that the "enormous scale of publicity" created a "heightened and somewhat unique danger of tainting" the jury, the scope of Plaintiff's media campaign similarly threatens to prejudice potential jurors.

Fourth, Plaintiff's counsel explicitly stated his intention to continue providing updates about the corresponding criminal trial, including details about jury selection and upcoming depositions. This demonstrates an ongoing commitment to influence public opinion throughout these proceedings.

The combination of legal conclusions, evidence disclosures, and the sheer scale of the publicity campaign presents a substantial likelihood of material

prejudice to Defendant's right to a fair trial, meeting the standard set forth in *Gentile* and applied to civil cases in *Marceaux*.

## II.    DEFENDANT'S REQUESTED GAG ORDER IS NARROWLY TAILORED TO ENSURE HIS RIGHT TO A FAIR TRIAL

### A.    Law

Undoubtedly, restrictions on free speech must be "no greater than is essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 94 S. Ct. 1800, 1811 (1974). So, where a gag order is issued, it is imperative its contents are just narrow enough "to eliminate substantially only that speech having a meaningful likelihood of materially impairing the court's ability to conduct a fair trial." *Brown*, 218 F.3d. at 429. If too vague or overbroad in its scope,

An overbroad gag order would impose unreasonable restrictions such as a complete silence that leave parties with no opportunity for expression and cause prejudice to a party. *Id.* at 429-30. The gag order in *Ford* was overbroad because it prohibited him from commenting on his indictment at all during his reelection campaign. The gag order discussed in *Brown* was not overbroad because it left the parties with "various avenues of expression, including assertions of innocence, general statements about the nature of an allegation or defense, and statements of matters of public record." *Brown*, 218 F.3d. at 429-30.

Any form of restraining order is unconstitutional for vagueness if it fails to provide sufficient detail and guidance about what is being prohibited. *See Smith v.*

*Goguen*, 94 S. Ct. 1242, 1246–47 (1974). Similarly, a gag order is not vague where it provides "sufficient guidance regarding the nature of the prohibited comments." *Brown*, 218 F.3d. at 430. The defendant in *Brown* successfully included enough information to not be seen as vague. *Id.* this included language that identified statements or information about the merits of the case that were intended to influence public opinion. This Motion specifically requests the same – that communications to the public and the media regarding the merits of the case another information council should reasonably know would interfere with a fair trial be prohibited.

A similar conclusion was drawn in *Levine* where the language prohibited statements to members of the press regarding the merits of the case until it was resolved by the jury. *Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590, 598-99 (9th Cir. 1985). Likewise, this Motion only requests that the order remain active until the resolution of this case. Since this Motion for a gag order proposes detailed and clear instructions to the parties, it is narrowly tailored to protect the Defendant's Sixth Amendment rights without unjustifiably burdening the Plaintiff's free speech rights.

### B.    Application

The gag order requested by Defendant Schurr is narrowly tailored to prevent prejudicial extrajudicial statements while preserving the parties' abilities to engage in protected speech. Unlike the overbroad order in *Ford* that prohibited a defendant

from commenting on his indictment during a reelection campaign, this order follows the approach approved in *Brown* by leaving open "various avenues of expression."

Specifically, the proposed order:

- Does not prohibit parties from asserting their positions

- Allows discussion of the general nature of allegations and defenses

- Permits statements regarding matters of public record

- Does not prevent comments unrelated to the merits of the case

Rather, it narrowly targets the types of prejudicial communications that have already occurred, such as:

- Plaintiff counsel's public assertions that Defendant "executed" the decedent

- Disclosure of expert opinions not yet in the public record

- Drawing legal conclusions about evidence

- The "JUSTICEFORPATRICKLYOYA" campaign clearly designed to influence public opinion [Exhibit 9, Billboard]

The order is also appropriately limited in duration, applying only until the resolution of this case, similar to the order approved in *Levine*. It therefore restricts no more speech than necessary to protect Defendant's right to a fair trial.

Regarding clarity, the proposed gag order provides sufficient guidance about what communication is prohibited. It explicitly identifies six categories of prohibited statements, including those about character and credibility of witnesses, contents of

evidence, merits of the case, legal conclusions, paid public advertising, and other information likely to interfere with fair adjudication. This specific enumeration ensures the parties have clear notice of what speech is restricted, avoiding constitutional vagueness concerns.

### III.    DEFENDANT'S REQUESTED GAG ORDER IS THE LEAST RESTRICTIVE MEANS NECESSARY TO PROTECT HIS SIXTH AMENDMENT RIGHT

#### A.    Law

The final consideration a court must make in assessing the constitutionality of a gag order on parties to judicial proceedings is whether the proposed order is the least restrictive means of burdening free speech to protect a fair trial. would *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 563, (1976); *see also Procunier*, 94 S. Ct. at 1811 (Affirming the use of a least restrictive means test where First Amendment issues are concerned, generally).

Courts have recognized several alternatives to gag orders that may be considered before restricting speech. In *Nebraska Press* and *Sheppard*, the Supreme Court identified several such alternatives: change of venue, continuance of the trial, emphatic jury instructions, thorough voir dire examinations, and jury sequestration. *Nebraska Press*, 427 U.S. at 563; *Sheppard*, 384 U.S. at 353-59. These alternatives must be evaluated in each case to determine if they would effectively protect the right to a fair trial while imposing fewer restrictions on speech than a gag order.

However, the Supreme Court has also acknowledged the limitations of these alternatives. In *Gentile*, the Court noted that intensive voir dire or a change of venue "may not be able to filter out all of the effects of pretrial publicity" or "to undo the effects of statements" by trial participants. 501 U.S. at 1074-75. Similarly, the Fifth Circuit in *Brown* observed that "delaying the commencement of the trial and sequestering the jury both impose well-known and serious burdens in their own right and would not have prevented, in any meaningful way, the infection of jurors." 218 F.3d. at 431.

Courts have also recognized that in the modern media environment, particularly with the advent of the internet and social media, traditional remedies may be less effective than they once were. When publicity is widespread and digital in nature, the effectiveness of geographically-based remedies like venue changes is diminished. See *Brown*, 218 F.3d. at 431 (noting that even ardent jury instructions may "be at best an imperfect filter, and would fail to address the threat of" extensive media coverage).

A gag order may therefore be the least restrictive means available when: (1) alternative measures would likely be ineffective due to the nature and extent of publicity; (2) the publicity directly threatens to prejudice the jury pool; and (3) the order restricts only those specific categories of speech most likely to cause prejudice. *See Levine*, 764 F.2d at 599-600.

## B.    Application

The requested gag order represents the least restrictive means available to protect Defendant's right to a fair trial given the specific circumstances of this case. The alternatives to a gag order are inadequate for several reasons.

First, the civil case has only recently commenced, while the criminal case against Defendant Schurr is about to begin trial. This creates a uniquely prejudicial situation where public statements about the civil case could directly influence the criminal proceedings and vice versa. As evidenced in Exhibit 6, Plaintiff's counsel has already stated his explicit intention to "continue to provide updates throughout these proceedings" including details about jury selection in the criminal case. This ongoing commentary creates an immediate and pressing threat to both proceedings.

Second, traditional remedies like change of venue would be ineffective at this critical juncture. With jury selection about to begin in the criminal case, Plaintiff's multimedia campaign—including billboards demanding "JUSTICEFORPATRICKLYOYA" and social media posts characterizing the incident as an "execution" (Exhibit 5)—has already saturated potential jury pools. [Exhibit 9, Billboards] This timing is particularly problematic as potential jurors are likely paying closest attention to news about the case immediately before and during jury selection, precisely when Plaintiff's counsel has promised to increase his commentary.

Third, delaying either trial would be counterproductive and prejudicial to all
parties. Delaying the criminal trial would violate Defendant's speedy trial rights,
while delaying the civil case would only allow more time for Plaintiff's counsel to
continue his media campaign before civil proceedings begin in earnest. The parallel
nature of the proceedings requires immediate action to prevent cross-contamination
of jury pools.

Fourth, voir dire and jury instructions are particularly inadequate remedies at
this stage. With jury selection imminent in the criminal case, the prejudicial effects
of statements like Plaintiff counsel's assertion that the Defendant "grossly deviated"
from training and that the force used was "unnecessary and therefore under the law
illegal and excessive" will be fresh in potential jurors' minds. Once jurors have been
exposed to such inflammatory characterizations from an attorney presumed to have
special knowledge of the case, the prejudice is exceptionally difficult to neutralize
through questioning or instructions.

Finally, the requested gag order is precisely targeted to restrict only those
categories of speech most likely to prejudice the jury pool at this critical juncture. It
does not prohibit all public statements but instead focuses specifically on statements
about witness credibility, evidence, legal conclusions, and paid publicity campaigns.
This narrow focus ensures that the order restricts no more speech than necessary to

protect the integrity of both judicial processes while they are most vulnerable to prejudicial influence.

For these reasons, with jury selection about to begin in the criminal case and the civil case just commencing, the requested gag order represents the most precise and least restrictive means of protecting Defendant's right to a fair trial while respecting First Amendment concerns.

## CONCLUSION

The evidence presented in this motion demonstrates that Plaintiff and his counsel have engaged in an extensive media campaign that goes far beyond permissible advocacy. Their public statements have repeatedly asserted Defendant's liability, disclosed non-public evidence and expert opinions, and employed multimedia methods to influence potential jurors, creating a substantial likelihood of material prejudice to Defendant Schurr's right to a fair trial.

The proposed gag order is narrowly tailored to prohibit only those categories of speech that threaten the integrity of the judicial process while preserving the parties' abilities to engage in protected expression. It represents the least restrictive means available to protect Defendant's right to a fair and impartial trial in light of the widespread publicity this case has received and will continue to receive.

The ethical obligations of all attorneys, as well as the integrity of the judicial process, require that legal matters be litigated in the courtroom, not in the press.

WHEREFORE, Defendant Christopher Schurr respectfully requests that this Court issue the proposed Gag Order to preserve this Court's ability to conduct a fair trial with a nonprejudiced jury.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:  April 18, 2025              E: khenderson@sewardhenderson.com

## CERTIFICATE OF COMPLIANCE

Consistent with LCivR 7.3(b)(ii), I, Kali Henderson, hereby certify that this brief complies with the restrictions as outlined in LCivR 7.3(b)(i). I further certify that the brief was prepared in Microsoft Word 365, which was used to generate the word count of 4,015 words, exclusive of those portions defined in LCivR 7.3(b)(i).

/s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:  April 18, 2025          E: khenderson@sewardhenderson.com

### PROOF OF SERVICE

I hereby certify that on **Friday, April 18, 2025**, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification to the following: ***All Parties and Attorneys of Record.***

/s/ Kali M. L. Henderson
**SEWARD HENDERSON PLLC**
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
T: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com