UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER LYOYA, as the
Personal Representative for
the Estate of PATRICK LYOYA,

Case No. 22-cv-01160
Hon. Paul L. Maloney
Mag. Judge Sally J. Berens

      Plaintiff,

v.

CHRISTOPHER SCHURR and
THE CITY OF GRAND RAPIDS,

      Defendants.

### DEFENDANT SCHURR'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR A GAG ORDER LIMITING EXTRAJUDICIAL STATEMENTS BY THE PARTIES

## COUNTER-ARGUMENT

Plaintiff's response fails to properly address the applicable legal standards governing gag order on parties. This reply corrects those misrepresentations and demonstrates why the narrowly tailored order requested is lawful, justified, and necessary to preserve the integrity of both this civil litigation and related criminal proceedings.

I.    **PLAINTIFF FAILS TO ADDRESS THE GOVERNING LAW, INSTEAD MISCHARACTERIZING DEFENDANT'S LEGAL ARGUMENTS.**

    **A.    Plaintiff improperly relies on case law defining prior restraint.**

Plaintiff cites just three cases in his Response: *Alexander*, *Procter*, and *Co. Security Agency*, but none of these discuss narrowly tailored speech limitations on the parties. Nor did Plaintiff explain how the three are related to this present case. Plaintiff never refuted the law put forth by Defendant that demonstrated gag orders on parties can be appropriate.

*Alexander v. United States*, 509 U.S. 544 (1993), is a criminal case in which Ferris J. Alexander was convicted of obscenity and Racketeer Influenced and Corrupt Organizations Act (RICO) violations, resulting in the forfeiture of his adult entertainment businesses and nearly $9 million in assets. The Supreme Court held that this forfeiture did not constitute a prior restraint; rather it was a permissible criminal punishment for past acts. *Id.* at 544. Nothing in this case establishes that gag orders on parties are unconstitutional.

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (1996), addressed whether a stipulation of the parties placing materials under seal would prohibit Business Week publishing documents. The court ruled that publishing documents did not pose a grave threat to a critical government interest or a threat to constitutional right. Instead  the interest sought to be protected was the litigants' vanity and commercial self-interest. *Id* at 225.

Plaintiff also cites to *Co. Security Agency v. Ohio DOC*, 296 F.3d 477 (6th Cir. 2002), where a private security firm and employer filed a civil rights action

against the Ohio Department of Commerce (ODC) after a freelanced journalist

obtained from the ODC about the security guards.   The trial court issued an

injunction to prevent the journalist from disclosing this information, citing concerns

that it could endanger the guards due to the tensions surrounding the labor dispute.

*Id.* at 481. The court of appeals reversed this decision, finding plaintiff did not meet

its burden justifying the restraint placed on the journalist prohibiting to publishing

the information he obtained. Although the burden is heavy, it is not impossible to

overcome when the restrained speech poses a grave threat to a constitutional right.

*Id.* at 485-486.

Collectively, Plaintiff's cited cases demonstrate the courts are open to placing

restrictions on speech when constitutional rights are at risk. A core constitutional

right held by Chris Schurr is his 6th Amendment right to a fair and impartial jury

deciding his criminal trial U.S. Const. amend. VI. The proposed gag order is worded

to protect that right, and is supported as set forth in his motion. [ECF 54, PageID

816-841]

**B.     The Plaintiff blatantly misstates the Defendant's argument regarding unconstitutional restraint.**

The requested Order is not an attempt to silence the Plaintiff and his counsel

entirely. It is a narrowly tailored remedy, designed to prevent statements that pose a

substantial likelihood of materially prejudicing the jury. Plaintiff's counsel knows

precisely what these kinds of statements refer to, as evidenced by his recent refusal

to comment to News 8 regarding the trial. [Exhibit 10, WoodTV Article on April 22, 2025]. His confusion over what constitutes "public" communication (press releases, interviews, social media posts) is disingenuous. He understands the scope; he just does not want to be held to it.

Plaintiff's Reply states that the Defendant has proposed an order allowing "[n]o communication of any kind with the public (however that is defined) or the media (presumably in any of the forms it may take) for an indefinite period of time." [ECF 55, PageID. 905-906] This is incorrect. Defendant's Motion defines the time window for restraint as the duration of these proceedings. It also expressly defines the limitations on communication to extend only to the parties on matters that concern the merits of this case and prevent the drawing of legal conclusions.

The Motion makes quite clear as to what statements are and are not permissible. For example, on December 7, 2022, Plaintiff's counsel held a press conference announcing the lawsuit against the City of Grand Rapids and Christopher Schurr and stated:

 "So what you have here, you have Patrick Lyoya, who is stopped for driving while black, and then as my great co-counsel attorney Ven Johnson said you have excessive force… So when you take driving while black plus excessive force, you end up with Patrick Lyoya being unjustly executed by this Grand Rapids police officer." [Exhibit 11, Fox 17 Facebook Post][1]

---

[1] Exhibit 11 includes the automatic closed captions provided by the Facebook page. The captions contain transcription errors. Specifically, the word "plus" is mistakenly

Under the restriction in the Motion, Plaintiff's counsel would still be able to hold a press conference and announce that a lawsuit had been filed. However, certain statements made in the conference would be prohibited under the Gag Order. For example, asserting that the Lyoya was stopped for "driving while black" attacks Defendant Schurr's character and implied an unlawful intention, violating the Order's ban on public commentary about a party's character, credibility, or expected testimony. Similarly, claiming "excessive force" suggests a legal conclusion before the trial, which would be prohibited under the Order. Furthermore, claiming that Lyoya was "unjustly executed" is a legal conclusion that uses inflammatory language, which would also be restricted under the Order. Statements like these are precisely what the Order is meant to prevent. It would not prevent parties from announcing filings or providing updates on the current phase of the trial. But it would stop statements that are likely to prejudice the jury pool, or threaten the fairness of the trial.

Plaintiff and his counsel's repeated public commentary present a clear and substantial likelihood of prejudice to both this civil case and the related criminal proceeding. Their conduct is a deliberate effort to shape public opinion while proceedings are pending, with potential jurors being exposed to these narratives.

---

rendered as "plastic", and the phrase "then as" is incorrectly transcribed as "there there's".

Their behavior threatens the integrity of both cases. A gag order is necessary to mitigate these risks.

## II.    EXPEDITED CONSIDERATION IS WARRANTED UNDER THE PRESENT CIRCUMSTANCES AND THE TIMING OF THE MOTION IS THEREFORE JUSTIFIED.

Plaintiff argues that the Defendant's Motion for a Gag Order should be rejected for failure to comply with Local Rule 7.1(e). While not as direct as may have been more helpful, the motion stated that the criminal trial was set to begin on April 28th, and that Plaintiff's counsel indicated he intended to make further statements about it. The motion specifically seeks to limit these comments due to their impact on not only the jury Defendant faces in that case, but ultimately in this case as well.

Plaintiff also argues that the criminal trial is not related to this case. That is disingenuous. The criminal trial raises near identical criticisms as this case, but seeks to judge the conduct under different standards. Its impact on the case before this Court cannot be ignored. Moreover, there is a notable increase in Plaintiff's counsel media engagement that appears strategically timed to coincide with the criminal proceedings. As of today, May 2, 2025, we have just received word that opposing counsel, Ben Crump, intends on holding a press conference today. Thus, expedited consideration of this motion is necessary due to the immediate impact that Plaintiff's

media campaign is designed to have on Defendant's ability to receive a fair trial

anywhere. Jury selection in the criminal case began on April 21, 2025.

Plaintiff also questions the timing of this motion. Yet, a glance at the docket

should make the timing understandable. April 21st also marked the day that decision

on Defendant's petition to the U.S. Supreme Court would be (and was) announced,

officially bringing back this case to this Court. The timing was no accident, and

brought cause for Defendants to expedite consideration of the Motion for a Gag

Order.

## CONCLUSION

The Motion for a Gag Order Limiting Extrajudicial Statements should be

granted. The Plaintiff's and his counsel public commentary and media engagement

pose a substantial risk of prejudicing the jury pool and compromising the integrity

of both civil and related criminal proceedings. The requested Gag Order is narrowly

tailored to address these concerns without infringing upon constitutional rights,

ensuring the fairness of the judicial proceedings. Therefore, the motion should be

granted.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ T. Joseph Seward (P35095)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   May 2, 2025           E: jseward@sewardhenderson.com

## CERTIFICATE OF COMPLIANCE

Consistent with LCivR 7.3(b)(ii), I, T. Joseph Seward, hereby certify that this

brief complies with the restrictions as outlined in LCivR 7.3(b)(i). I further certify

that the brief was prepared in Microsoft Word 365, which was used to generate the

word count of 1,482 words, exclusive of those portions defined in LCivR 7.3(b)(i).

 /s/ T. Joseph Seward (P35095)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   May 2, 2025                          E: jseward@sewardhenderson.com

## PROOF OF SERVICE

I hereby certify that on **Friday, May 2, 2025**, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification to the following: ***All Parties and Attorneys of Record.***

/s/Farah Hammoud
**SEWARD HENDERSON PLLC**
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
T: (248) 733-3580
F: (248) 733-3633
E: fhammoud@sewardhenderson.com