UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **PETER LYOYA,** as the<br>Personal Representative for<br>the Estate of **PATRICK LYOYA,** | Case No. 22-cv-01160<br>Hon. Paul L. Maloney<br>Mag. Judge Sally J. Berens |

     Plaintiff,

v.

**CHRISTOPHER SCHURR** and
~~**THE CITY OF GRAND RAPIDS,**~~

     Defendants.

## DEFENDANT SCHURR'S MOTION FOR DISCOVERY SANCTIONS

Defendant, **CHRISTOPHER SCHURR,** by and through undersigned counsel, brings this Motion for Discovery Sanctions. In support of this motion, he states the following:

1.     Expert disclosures are not a formality. When a party signs and serves expert disclosures under Rule 26(a)(2), that signature is a certification that every name on the list has a good-faith basis for inclusion — that the expert was actually consulted, actually retained, and actually expected to testify. Fed. R. Civ. P. 26(g)(1)(A). The opposing party reads those disclosures and gets to work. That is precisely what happened here, and precisely what makes Plaintiff's conduct indefensible.

1

2.      On July 1, 2025, Plaintiff's counsel signed and served expert disclosures identifying thirteen witnesses: two use-of-force experts, two forensic pathologists, two psychiatric experts, vocational and economic damages experts, and a forensic engineering team. Defendant's counsel had every reason to take those designations at face value, including the fact that two of the use-of-force experts had personally testified against Officer Schurr at his criminal trial.

3.      In the forty-eight days between Plaintiff's July 1 disclosures and Defendant's August 18 rebuttal deadline, Defendant retained twelve experts at substantial expense. Those experts were selected and engaged specifically to counter the witnesses Plaintiff had designated. The retainers were paid. The consultations began. The defense was built around the case Plaintiff appeared to be preparing to present.

4.      Plaintiff's interrogatory responses, served on September 9, 2025, revealed the truth: of the thirteen designated experts, only four had ever been consulted. The remaining nine, Bloomfield, Stoughton, Baden, Wilson, Shiener, West, Shelton, Thomson, and the Knott Laboratory team, had never been contacted. They were listed in a certified disclosure without any engagement, any retention, or any reasonable basis for inclusion.

5.      The Rule 26(g)(1)(A) certification is not aspirational. It is an affirmative representation that the disclosure is complete and correct and the product

of a reasonable inquiry. Certifying the inclusion of nine experts who were never consulted is a textbook violation of that rule. Under Rule 26(g)(3), when a certification violates the rule without substantial justification, sanctions are not discretionary — the Court must impose them. Plaintiff has offered no justification for the July designations at any point in this litigation.

6.    The harm from Plaintiff's false certification is direct and quantifiable. Dr. Robert S. Brown, Jr., a board-certified forensic psychiatrist, was retained specifically to rebut the anticipated testimony of Dr. Gerald Shiener as to liability. Dr. Brown's non-refundable retainer alone was $12,000. Dr. Shiener's report addressed only damages, with no liability opinions whatsoever. Had Plaintiff's disclosures accurately reflected which experts it had actually retained and for what purposes, Defendant would not have retained Dr. Brown at all.

7.    Similarly, Von Kliem, Lon Bartel, and Dr. Mark Kroll were retained specifically to counter the anticipated use-of-force testimony of Nicholas Bloomfield and Seth Stoughton, both of whom Plaintiff has since abandoned without explanation. These expenditures were wholly unnecessary.

8.    Rule 37(c)(1) provides an independent basis for sanctions. Beyond the exclusion of improperly disclosed witnesses, the rule expressly authorizes the Court to order "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). Plaintiff's disclosure failures were neither

3

substantially justified nor harmless. Defendant spent thousands of dollars preparing a defense against witnesses Plaintiff was never positioned to call.

9.     Under 28 U.S.C. § 1927, an attorney who unreasonably and vexatiously multiplies the proceedings may be required to personally satisfy the excess costs those proceedings generated. That standard is met here. This motion, these expenditures, and the countless hours of correspondence preceding them were all avoidable, and were made necessary entirely by Plaintiff's counsel's conduct.

10.     The misleading expert designations are not an isolated problem. They are consistent with a pattern of discovery misconduct that has extended to every category of discovery in this case. For example, Plaintiff listed fact witnesses Muhizibwa Vumilia and Chantel Kieta as witnesses counsel could produce for deposition, only to reverse course two months later and claim both lived out of the country or out of state, while refusing to provide any contact information. Further examples are explored in the brief.

11.     The Sixth Circuit has recognized that a clear record of delay or contumacious conduct satisfies the willfulness and bad-faith standard for sanctions purposes. *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013). The record here is not a close call. It is a sustained course of conduct that has imposed real costs on Defendant and real burdens on this Court, all of which could have been avoided by the most basic compliance with the Federal Rules.

12.    Defendant does not seek to prevent Plaintiff from presenting the experts he has legitimately retained and properly disclosed. Defendant seeks what the Federal Rules contemplate: reimbursement of the costs imposed on him by Plaintiff's failure to comply with those rules, and a sanction sufficient to deter this kind of conduct going forward.

Defendant Christopher Schurr respectfully requests that the Court grant this Motion and enter an order awarding the relief set forth in the accompanying brief, including reimbursement of the expenses incurred in retaining unnecessarily retained experts, sanctions against Plaintiff's counsel personally under 28 U.S.C. § 1927, such further sanctions as the Court deems appropriate under its inherent authority, and the attorney's fees and costs incurred in bringing this Motion.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   February 13, 2026          E: khenderson@sewardhenderson.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **PETER LYOYA,** as the Personal Representative for the Estate of **PATRICK LYOYA,** | Case No. 22-cv-01160 Hon. Paul L. Maloney Mag. Judge Sally J. Berens |

      Plaintiff,

v.

**CHRISTOPHER SCHURR** and
~~**THE CITY OF GRAND RAPIDS,**~~

      Defendants.

**BRIEF IN SUPPORT OF DEFENDANT SCHURR'S MOTION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

i

# TABLE OF CONTENTS

Introduction ........................................................................................... iii

Statement of Facts ...................................................................................1

   I.    Plaintiff's Expert Designations and Defendant's Good-Faith Reliance ..........1

   II.   The Contradictory Expert Lists .................................................4

   III.  The Missing Reports and Continued Deficiencies........................................6

   IV.  Defense Counsel's Efforts to Resolve Without Court Intervention ............7

Law & Argument.......................................................................................8

   I.    Plaintiff's Misleading Expert Designations Caused Defendant To Incur Unnecessary Costs, and the Court Should Order Reimbursement........................8

      A.   Plaintiff's Counsel Violated Rule 26(g) by Certifying Expert Disclosures That Were Neither Complete nor Correct, and the Court Must Impose Sanctions ........................................................................................8

      B.   Rule 37(c)(1) Authorizes Sanctions Beyond Exclusion, Including Payment of Expenses Caused by the Disclosure Failure ..................................10

      C.   Plaintiff's Counsel's Conduct Unreasonably and Vexatiously Multiplied the Proceedings Under 28 U.S.C. § 1927 ........................................12

      D.   The Court's Inherent Authority Independently Supports Sanctions for Bad-Faith Litigation Conduct ............................................................14

   II.   The Pattern of Plaintiff's Discovery Violations Demonstrates Bad Faith..15

      A.   Failure to Provide Expert Deposition Dates and Ongoing Scheduling Obstruction................................................................................15

      B.   Misleading Fact Witness Disclosures: Vumilia and Kieta.....................16

      C.   Repeated Violations of Subpoena Notice Requirements........................17

      D.   Failure to Facilitate Record Retrieval....................................................18

      E.   The Cumulative Pattern Demonstrates Bad Faith .................................19

Conclusion .............................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Carpenter v. City of Flint*,
    723 F.3d 700 (6th Cir. 2013) ...............................................................21

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).................................................................................16

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*,
    388 F.3d 976 (6th Cir. 2004) ...............................................................12

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
    307 F.3d 501 (6th Cir. 2002) ...............................................................16

*Freeland v. Amigo*,
    103 F.3d 1271 (6th Cir. 1997) .............................................................21

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962)...............................................................................16

*Musser v. Gentiva Health Servs.*,
    356 F.3d 751 (7th Cir. 2004) ................................................ 12, 13,14

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*,
    465 F.3d 642 (6th Cir. 2006) ...............................................................15

*Roberts ex rel. Johnson v. Galen of Va., Inc.*,
    325 F.3d 776 (6th Cir. 2003) ...............................................................12

*Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
    666 F. Supp. 2d 820 (N.D. Ohio 2009) ..............................................12

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
    318 F.3d 592 (4th Cir. 2003) ...............................................................14

**Statutes**

28 U.S.C. § 1927 ....................................................................................................15

**Rules**

Fed. R. Civ. P. 26(a)(2)(A) ...................................................................................11

Fed. R. Civ. P. 26(g)(1)(A) ............................................................................ 1, 4, 11

Fed. R. Civ. P. 26(g)(3)...........................................................................................11

Fed. R. Civ. P. 37(c)(1) ..........................................................................................12

Fed. R. Civ. P. 37(c)(1)(A) ..................................................................................3, 13

Fed. R. Civ. P. 45(a)(4)...........................................................................................19

# INTRODUCTION

Expert disclosure rules are supposed to allow an opposing party to prepare. When a party certifies thirteen experts it intends to call at trial, the other side gets to work on their rebuttal. That preparation costs money. When the designating party turns out to have never consulted nine of those thirteen experts and drops several of them quietly months later, that cost does not disappear; it transfers onto the party who relied on the disclosures in good faith.

That happened here. Plaintiff certified a list of thirteen expert witnesses, Defendant retained twelve rebuttal experts at substantial cost in direct response, and Plaintiff's own subsequent discovery responses revealed that nine of those thirteen experts had never been consulted. What followed was months of contradictory disclosures, unanswered correspondence, and refusals to engage.

Rule 26(g)(3) mandates sanctions when a disclosure certification lacks substantial justification. Rule 37(c)(1) independently authorizes an award of expenses. 28 U.S.C. § 1927 and the Court's inherent authority provide further bases for relief in these circumstances.

# STATEMENT OF FACTS

## I.    PLAINTIFF'S EXPERT DESIGNATIONS AND DEFENDANT'S GOOD-FAITH RELIANCE

Per the Scheduling Order, Plaintiff was required to disclose expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2) by July 1, 2025. [ECF No. 63,

PageID.961] Plaintiff served initial expert disclosures identifying thirteen experts across various fields. [Exhibit 1, Plaintiff's Expert Disclosures] Plaintiff's counsel signed these disclosures, certifying under Rule 26(g)(1)(A) that the disclosures were "complete and correct as of the time" they were made and were formed "after a reasonable inquiry." Fed. R. Civ. P. 26(g)(1)(A).The thirteen experts included:

1. Chief Thomas Tiderington (ret), liability expert in corrections and law enforcement.
2. Scott DeFoe, expert in police practices including uses of force
3. Andrew Scott, liability expert in law enforcement.
4. Nicholas Bloomfield, expert in police practices including uses of force
5. Seth Stoughton, expert in policing and public safety
6. Michael Baden, MD; damage expert in forensic pathology.
7. Allecia Michelle Wilson, MD, forensic and anatomic pathologist
8. Gerald Shiener, MD; liability/damages expert; board certified in forensic and addiction psychiatry, amongst other specialties.
9. Sara West, MD; damage expert; board certified in psychiatry.
10. Amelia Shelton, MA; damage expert in vocational rehabilitation.
11. Michael Thomson, Ph.D.; damage expert in employment and economics.
12. Bo Milberger and Jason Evans, Knott Laboratory, LLC; forensic engineering and visualization experts.

[Exhibit 1, Plaintiff's Expert Disclosures]

In the forty-eight days that followed, Defendant retained twelve experts across forensic pathology, use of force, human factors, forensic video analysis, vocational rehabilitation, economics, and forensic psychiatry, each selected to address the corresponding witnesses. [Exhibit 2, Defendant's Expert Disclosures] Each was contacted and retained before being listed, and Defendant incurred substantial costs consulting with, preparing them, and retaining them.

2

Several of Defendant's experts were retained specifically to address experts Plaintiff has since abandoned. Plaintiff designated Nicholas Bloomfield and Seth Stoughton as use-of-force experts, both of whom testified for the prosecution at Defendant's criminal trial, giving defense counsel every reason to anticipate that Plaintiff intended to present the same testimony in this civil action. In direct response, Defendant retained Von Kliem, Lon Bartel, and Dr. Mark Kroll, among others, to rebut the anticipated testimony of Bloomfield and Stoughton. Plaintiff has since dropped both Bloomfield and Stoughton without explanation.

Similarly, Plaintiff designated Gerald Shiener, M.D., as both a liability and damages expert, and Sara West, M.D., as a damages expert in psychiatry. [Exhibit 1, Plaintiff's Expert Disclosures] In direct response, Defendant retained Robert S. Brown, Jr., M.D., a board-certified forensic psychiatrist, to address the anticipated psychiatric testimony from Shiener at a comparable professional level. Dr. Brown's non-refundable retainer alone was $12,000. [Exhibit 3, Brown Disclosure] Plaintiff subsequently dropped West entirely, and Dr. Shiener's report addressed only damages, not liability. Had Plaintiff accurately represented the scope of his anticipated expert testimony, Defendant would not have retained Dr. Brown.

Plaintiff also designated Allecia Michelle Wilson, M.D., as a forensic and anatomic pathologist. In response, Defendant retained Michael Alan Graham, M.D.

3

to offer rebuttal forensic pathology opinions. Plaintiff subsequently dropped Dr. Wilson and now apparently intends to rely on Dr. Michael Baden, M.D.

## II.    THE CONTRADICTORY EXPERT LISTS

What followed Plaintiff's July 1st designations was a series of contradictory disclosures and discovery responses that reveal the July designations were not made after any reasonable inquiry.

On September 9, 2025, Plaintiff served a response to Defendant's Interrogatories,[1] which identified only four expert witnesses having been *consulted*. [Exhibit 4, Plaintiff's Discovery Responses] Those four were: DeFoe, Tiderington; Scott, and Dr. Spitz (now deceased). The remaining nine designated experts were nowhere to be found. Adding to the deficiencies, Plaintiff Peter Lyoya did not sign the answers; only his attorney, Ms. Hatchett, signed. [Exhibit 4, Plaintiff's Discovery Responses]

The September 9th responses are a tacit admission that at least nine of the thirteen experts Plaintiff first designated were never consulted. Those nine include Bloomfield, Stoughton, Baden, Wilson, Shiener, West, Shelton, Thomson, and the Knott Laboratory team. Yet Plaintiff's counsel certified under Rule 26(g) that the July disclosures were complete and correct, and made after a reasonable inquiry.

---

[1] These responses were served untimely and only after a proposed stipulation to compel responses was emailed. [Exhibit 6, Email and Proposed Stipulation]

On November 12, 2025, defense counsel discussed these issues in person at a deposition and documented as much in an email the next day. [Exhibit 5, 11-13 Email] The email detailed the discrepancy between the July list and discovery responses. It noted that one expert, Ken Katsaris, that previously submitted an affidavit in this case detailing the opinions he will offer (see ECF No. 26, PageID.391; ECF No. 26-4, PageID.441) was not listed, rendering the list incomplete. The email sought resolution through stipulated withdrawal of the phantom designations, supplementation to correct the record, or, as a last resort, a motion in which costs would also be pursued. Defense counsel simultaneously sent a letter on November 13 detailing additional deficiencies with the interrogatories, including the missing verification and four other substantive defects. [Exhibit 7, 11-13 Letter]

The discrepancies deepened. On November 14, 2025, Plaintiff served amended disclosures naming eight expert witnesses. [Exhibit 8, Plaintiff's First Amended Disclosures] This third version of the list included: Tiderington, DeFoe, Scott, Baden, Shiener, Shelton, Thomson, and Milberger and Evans. All eight appeared on the original July list, but the amended list dropped four experts from the original thirteen—Bloomfield, Stoughton, Wilson, and West—without explanation or notice.

5

The very next day, on November 15, 2025, Plaintiff served amended interrogatory responses identifying six experts as having been consulted: DeFoe, Tiderington, Scott, the deceased Dr. Spitz, Dr. Baden, and Dr. Shiener. [Exhibit 9, Plaintiff's First Amended Discovery Responses] This fourth version of the list still did not include Katsaris. Notably, the amended interrogatories now claimed that Baden and Shiener had been consulted — directly contradicting the September responses, which listed neither.

These contradictions cannot be reconciled. Plaintiff has produced at least four materially different versions of his expert list across a five-month period. The interrogatory responses — even in their amended form — confirm that the majority of experts designated on July 1st were never consulted. At best, Plaintiff's counsel designated experts without any reasonable basis for believing they would be called. At worst, the designations were made to inflate Plaintiff's apparent trial preparation and force Defendant into incurring unnecessary costs.

## III.    THE MISSING REPORTS AND CONTINUED DEFICIENCIES

On December 1, 2025, Plaintiff provided expert reports for seven witnesses: DeFoe, Shelton, Thomson, Shiener, Baden, Scott, and Tiderington. No report was provided for video experts Bo Milberger and Jason Evans of Knott Laboratory, despite their inclusion on the November 14 amended disclosure.

The report that Dr. Shiener produced further exposed the misleading nature of Plaintiff's designations. Plaintiff had previously disclosed Dr. Shiener as a "liability/damages expert." [Exhibit 1, Plaintiff's Initial Disclosures] Based on that dual designation, Defendant retained Dr. Robert Brown specifically to address the anticipated *liability* opinions from a forensic psychiatrist. Dr. Shiener's report, however, addressed only damages suffered by Peter Lyoya. [Exhibit 10, Shiener Report] It offered no liability opinions whatsoever. Defendant had already incurred $10,000 in retainer fees for Dr. Brown based on the prior representation that Shiener would opine on liability. That expense was wholly unnecessary.

## IV. DEFENSE COUNSEL'S EFFORTS TO RESOLVE WITHOUT COURT INTERVENTION

Defense counsel made repeated efforts to resolve these issues without burdening the Court. On November 12th, defense counsel had an in-person discussion about the issue, following that up with the November 13th email and a detailed letter identifying the discrepancies and seeking resolution. [Exhibit 5, 11-13 Email; Exhibit 7, 11-13 Letter] Neither communication received a response. On January 5th, defense counsel sent another letter detailing the continuing discrepancies and requesting a response. [Exhibit 11, 1-5 Letter] This letter was also ignored.

On February 10, 2026, during a video conference, the issue was discussed again. Ms. Hatchett acknowledged she had not responded to either letter, stated that she could not discuss the issues or concur in any resolution, and told defense counsel

7

to file whatever had to be done. She offered no explanation for the contradictory disclosures, no justification for designating experts who were never consulted, and no proposal to reimburse the costs Defendant incurred in reliance on the misleading July designations. Multiple other issues were also addressed with limited resolution.

## LAW & ARGUMENT

### I.    PLAINTIFF'S MISLEADING EXPERT DESIGNATIONS CAUSED DEFENDANT TO INCUR UNNECESSARY COSTS, AND THE COURT SHOULD ORDER REIMBURSEMENT

The Federal Rules of Civil Procedure impose specific requirements on expert disclosures for a reason: to allow the opposing party to prepare its case. When a party designates thirteen experts it never retained and then quietly abandons most of them months later, the opposing party — which has been retaining rebuttal experts and incurring substantial costs in the interim — suffers real, quantifiable harm. Rule 26(g), Rule 37(c)(1), 28 U.S.C. § 1927, and the Court's inherent authority each provide independent bases for requiring Plaintiff to reimburse the costs Defendant incurred in reliance on the misleading designations.

### A.    Plaintiff's Counsel Violated Rule 26(g) by Certifying Expert Disclosures That Were Neither Complete nor Correct, and the Court Must Impose Sanctions

Rule 26(g)(1)(A) provides that every discovery disclosure must be signed by at least one attorney of record, and that signature constitutes a certification that the disclosure is "complete and correct as of the time it is made" and was formed "after

a reasonable inquiry." Fed. R. Civ. P. 26(g)(1)(A). This certification is not a formality. It is an affirmative representation to opposing counsel and to the Court that the disclosing party has a good-faith basis for every name on its expert list.

Plaintiff's counsel signed the July 1, 2025, expert disclosure identifying thirteen individuals as expert witnesses Plaintiff "may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Yet Plaintiff's own interrogatory responses — served just over two months later — revealed that only four of those thirteen experts had even been consulted. The remaining nine were designated without any contact, retention, or engagement whatsoever. By no conceivable standard can a disclosure identifying nine individuals, who were never consulted, as trial experts be characterized as "complete and correct" or the product of "reasonable inquiry."

The consequence for violating Rule 26(g) is mandatory. Rule 26(g)(3) provides that if a certification violates the rule "without substantial justification, the court, on motion, **must** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis added). The word "must" is not discretionary. If the Court finds that the July 1st certification lacked substantial justification — and the

9

serial contradictions in Plaintiff's own subsequent filings establish precisely that —
sanctions are required.

The "reasonable expenses caused by the violation" here are the costs
Defendant incurred in retaining experts to rebut the testimony of individuals Plaintiff
never intended or was prepared to call. Dr. Brown's $12,000 retainer alone illustrates
the magnitude of the harm. When the wasted retainer fees, consulting costs, and
preparation time for all unnecessarily retained experts are tallied, the total is
substantial. These costs flow directly from Plaintiff's misleading certification.

**B.     Rule 37(c)(1) Authorizes Sanctions Beyond Exclusion, Including Payment of Expenses Caused by the Disclosure Failure**

Rule 37(c)(1) provides that a party who fails to provide information required
by Rule 26(a) "is not allowed to use that information…unless the failure was
substantially justified or is harmless. " Fed. R. Civ. P. 37(c)(1). This exclusion is
"automatic and mandatory" unless the offending party demonstrates justification or
harmlessness. *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976,
983 (6th Cir. 2004) (*quoting Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758
(7th Cir. 2004)). The non-disclosing party must demonstrate substantial justification
or harmlessness. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782
(6th Cir. 2003); *Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 666 F.
Supp. 2d 820, 826 (N.D. Ohio 2009).

10

Defendant acknowledges that exclusion of the abandoned experts is not a meaningful remedy here; Plaintiff has already dropped them. But Rule 37(c)(1) does not limit the Court to exclusion. The rule provides that "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard…may order payment of the reasonable expenses, including attorney's fees, caused by the failure..[or] may impose other appropriate sanctions…" Fed. R. Civ. P. 37(c)(1)(A) and (C). This is precisely the remedy Defendant seeks.

Plaintiff's failure to comply with Rule 26(a)(2) was neither substantially justified nor harmless. As to justification, Plaintiff's counsel has offered none. Despite three written communications and a video conference raising these issues, Ms. Hatchett has provided no explanation for why nine experts were designated without being consulted, why the lists have changed four times, or why defense counsel's letters were ignored. The absence of any justification, standing alone, weighs heavily in favor of sanctions. *See Dickenson*, 388 F.3d at 983.

As to harmlessness, the Sixth Circuit has recognized that the failure to comply with expert disclosure requirements causes concrete prejudice when it deprives the opposing party of the ability to take appropriate countermeasures. *See Musser*, 356 F.3d at 758–59. Here, the harm is the inverse but equally concrete: Defendant *did* retain rebuttal experts, at substantial cost, because the designations led Defendant to

11

believe rebuttal was necessary. Those costs are now wasted. The failure was not harmless; it was expensive.

The prejudice extends beyond quantifiable costs. Expert designations do not merely trigger rebuttal retention — they shape the entire trajectory of a party's defense. In the months following Plaintiff's July 1 disclosures, Defendant prepared his case around the reasonable expectation that he would face testimony from thirteen experts across multiple disciplines, including two use-of-force experts who had testified against him at his criminal trial, two forensic pathologists, two psychiatric experts, and a forensic engineering and visualization team. Defense counsel developed strategies, developed themes, coordinated among experts to avoid gaps and overlap, and made strategic decisions about the scope and focus of each defense expert's report, all in reliance on the anticipated contours of Plaintiff's case.

Those strategic choices are now baked into the defense. Expert reports have been written. The defense narrative was constructed to address a case that Plaintiff, as it turns out, was never prepared to present. *See Musser*, 356 F.3d at 758–59; *see also Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (recognizing that prejudice includes the broader disruption to case preparation). That the full extent of this prejudice cannot be measured in dollars underscores why meaningful sanctions are necessary to deter this conduct.

**C.    Plaintiff's Counsel's Conduct Unreasonably and Vexatiously Multiplied the Proceedings Under 28 U.S.C. § 1927**

Section 1927 of Title 28 provides that "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In the Sixth Circuit, this requires a showing that counsel's actions, when viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court. *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

Designating thirteen experts without having consulted nine of them is, at minimum, reckless. But the conduct here goes beyond a single misleading disclosure. Plaintiff's counsel compounded the initial violation at every subsequent opportunity — serving interrogatory responses that contradicted the July disclosures, ignoring defense counsel's November 13th letter, serving amended disclosures that still included experts never consulted, ignoring the January 5th letter, and refusing to engage substantively at the February 10th conference.

At every turn, Plaintiff's counsel had the opportunity to withdraw the designations, acknowledge the error, and mitigate the harm. At every turn, she declined. This pattern of conduct unreasonably and vexatiously multiplied the proceedings by forcing Defendant to retain unnecessary experts, prepare unnecessary rebuttal disclosures, send multiple unanswered communications, and

13

ultimately file this motion. The excess costs, expenses, and attorneys' fees incurred as a result should be borne by Plaintiff's counsel personally.

### D. The Court's Inherent Authority Independently Supports Sanctions for Bad-Faith Litigation Conduct

Federal courts possess "inherent power" "to  manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (*citing Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962). This inherent authority includes the power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (internal quotation marks omitted). The Sixth Circuit has recognized this authority in cases involving discovery abuses. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 516-17 (6th Cir. 2002).

Plaintiff's conduct here constitutes the kind of bad-faith litigation behavior that warrants sanctions under the Court's inherent authority. The July 1st designations were either knowingly false, listing experts Plaintiff's counsel knew had not been consulted, or were made with reckless indifference to their accuracy. Either characterization supports a finding of bad faith. The subsequent refusal to correct the record, despite repeated requests, compounds the misconduct. And the concrete financial harm to Defendant, i.e., thousands of dollars in wasted expert fees, provides the Court with a clear and measurable basis for a sanctions award.

14

## II. THE PATTERN OF PLAINTIFF'S DISCOVERY VIOLATIONS DEMONSTRATES BAD FAITH.

The misleading expert designations that form the core of this motion do not exist in isolation. They are part of a broader pattern of discovery misconduct by Plaintiff's counsel that has permeated every category of discovery in this case — from expert and fact witness disclosures to deposition scheduling to third-party subpoena compliance. Each violation follows the same pattern: Plaintiff makes a representation, Defendant relies on it in good faith, and Plaintiff reverses course without explanation or notice. Viewed together, these violations demonstrate that Plaintiff's discovery conduct is not the product of occasional oversight but rather a systematic disregard for the obligations imposed by the Federal Rules.

### A. Failure to Provide Expert Deposition Dates and Ongoing Scheduling Obstruction

Plaintiff's discovery misconduct extended beyond the misleading expert designations to include a protracted refusal to make his own experts available for deposition. Despite disclosing reports for experts he intended to call at trial, Plaintiff refused for months to provide deposition dates, forcing Defendant to pursue the issue through repeated correspondence that went unanswered.

On December 5, 2025, defense counsel requested available dates for depositions of Tiderington, DeFoe, Scott, Baden, Shiener, Shelton, and Thomson. [Exhibit 12, Scheduling Email Chain, p. 8–9.] After no response, follow-ups were

sent on December 19th, January 14th, January 20th, January 21st, and January 27th, each requesting dates for the remaining experts and each receiving no reply. [Exhibit 12, Scheduling Email Chain, p. 1–3; Exhibit 13, Scheduling Chain 2, p. 1–3.] On February 5th, defense counsel sent a final request stating that dates must be confirmed by end of day or a motion to compel would follow. [Exhibit 13, Scheduling Chain 2, p. 1.] Plaintiff did not respond.

Only after Defendant raised the prospect of judicial intervention at the February 10th video conference did Plaintiff agree to make his experts available. The delay consumed critical weeks of the discovery period that cannot be recovered and came only after two months of unanswered requests and the explicit threat of court intervention.

Plaintiff's scheduling obstruction has taken a new form. Having refused to provide dates for his own experts for two months, Plaintiff now seeks to schedule depositions of Defendant's experts—despite having ignored Defense counsel's initial offers of availability when the issue was first raised. [Exhibit 12, Scheduling Email Chain, p. 3-4] Neither Defendant nor the experts have remaining availability to accommodate depositions they tried to schedule weeks ago. Plaintiff should not benefit from his own delay by demanding last-minute accommodations.

**B.    Misleading Fact Witness Disclosures: Vumilia and Kieta**

16

Plaintiff's pattern of misrepresentation extended to fact witnesses. Plaintiff's initial disclosures identified both Muhizibwa Vumilia and Chantel Kieta as witnesses listed "c/o Plaintiff's counsel," a representation that counsel would facilitate their production for deposition. [Exhibit 15, Plaintiff's Initial Disclosures Witness List.] On September 20, 2025, that express representation was confirmed. [Exhibit 16, 9-20 Email.] Defendant relied on that representation in structuring his discovery plan and requested those depositions.

On October 29, 2025, Plaintiff's counsel reversed course, stating that Vumilia would not be produced because she resides in the Democratic Republic of the Congo and that Kieta would not be produced because she now resides in Kentucky. [Exhibit 17, 10-29 Email.] The pattern is the same as with the expert designations: a definitive representation, good-faith reliance by Defendant, and a reversal months later with no offer to mitigate the consequences.

### C.    Repeated Violations of Subpoena Notice Requirements

Throughout discovery, Plaintiff repeatedly violated Rule 45(a)(4)'s requirement to provide advance notice to opposing parties before serving subpoenas that command production of documents. The rule is unambiguous: notice and a copy of the subpoena "must be served on each party" before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4). Plaintiff disregarded this requirement on multiple occasions, issuing subpoenas to the Kent County Prosecutor's Office,

the Grand Rapids Police Department, and eight separate witnesses without providing timely advance notice to Defendant. [Exhibit 18, Duces Tecum Subpoenas; Exhibit 19, 12-23 Email; Exhibit 21, Plaintiff's Deposition Subpoenas.]

The prejudice from these violations is best illustrated by the Coastal Careers and Wyoming Police Department subpoenas. On January 7, 2026, defense counsel sent proposed subpoenas for records from both entities to Plaintiff's counsel for review before service, consistent with the cooperative discovery process the rules contemplate. [Exhibit 22, 1-7 Email re Proposed Subpoenas.] That same day, without responding to Defendant's proposed subpoenas and without providing any notice, Plaintiff mailed his own subpoenas to the same two entities. [Exhibit 23, Plaintiff's Subpoenas.] Because Defendant had no knowledge that Plaintiff had already acted, Defendant proceeded to issue his own separate subpoenas, resulting in duplicative and potentially conflicting document requests to the same third parties. Had Plaintiff simply complied with the notice requirement, the parties could have coordinated and avoided the confusion entirely.

### D.    Failure to Facilitate Record Retrieval

Plaintiff's failure to facilitate discovery extends to record retrieval as well. On November 24th, Defendant asked that Plaintiff complete authorizations to permit the release of the Decedent's records. [Exhibit 24, Authorization Email Chain] When they were finally returned on January 5, 2026, after multiple follow-ups, they were

not fully or correctly completed. The authorizations had to be corrected and the same was sought in an email on January 15, 2026. [Exhibit 25, Second Authorization Chain]. The corrected authorizations still have not been received.

### E.    The Cumulative Pattern Demonstrates Bad Faith

Viewed individually, these violations might be characterized as isolated missteps. Viewed together, they reveal a consistent course of conduct that falls well below the standards the Federal Rules require. In every category of discovery, Plaintiff followed the same pattern: make a representation, fail to follow through, refuse to communicate, and leave Defendant to absorb the consequences.

The Sixth Circuit has recognized that "a clear record of delay or contumacious conduct" satisfies the willfulness and bad-faith element for sanctions purposes. *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). That standard is met here.

## CONCLUSION

For the foregoing reasons, Defendant Christopher Schurr respectfully requests that the Court enter an order:

1. Finding that Plaintiff's counsel violated Rule 26(g)(1)(A) by certifying the July 1st expert disclosures;

2. Ordering, pursuant to Rule 26(g)(3), that Plaintiff and Plaintiff's counsel pay the reasonable expenses, including attorney's fees, caused by the deficient certification;

3. Ordering, pursuant to Rule 37(c)(1), payment of the reasonable expenses and attorney's fees caused by Plaintiff's failure to provide complete and accurate expert disclosures under Rule 26(a)(2);

4. Ordering, pursuant to 28 U.S.C. § 1927, that Plaintiff's counsel satisfy the excess costs, expenses, and attorney's fees incurred as a result of counsel's conduct in unreasonably and vexatiously multiplying these proceedings;

5. Ordering, under the Court's inherent authority, such further sanctions as the Court deems appropriate to address the pattern of bad-faith discovery conduct;

6. Awarding Defendant his reasonable attorney's fees and costs incurred in preparing and filing this motion; and

7. Granting such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendant Schurr, only*
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:  February 13, 2026          E: khenderson@sewardhenderson.com

## LCıvR 7.3(b)(ii) Certification

I hereby certify that the above brief contains 4,258 words and was prepared in Microsoft Word 365 which generated the word count as displayed below. This count is in compliance with LCivR 7.3(b)(i).



/s/Kali M. L. Henderson
**Seward Henderson PLLC**

## Certificate of Service

I hereby certify that on **Friday, February 13, 2026,** I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will send notice to all parties and attorneys of record.

/s/Lillian Nelson
**Seward Henderson PLLC**